[Civ. No. 25286.   Second Dist., Div. One.   July 17, 1961.]

DORA BYLLING, Appellant, v. CHARLES EDWARDS et al., Respondents.

J. F. Goux and John M. Sink for Appellant.

Charles H. Lynch for Respondents.

LILLIE, J.—Plaintiff appeals from a judgment of nonsuit entered in a personal injury action resulting from a fall in defendants' garage.

The following facts, taken from a settled statement, were offered on the issue of liability: Defendants Edwards celebrated their twenty-fifth wedding anniversary in their home at an afternoon reception for 150 people; they had no paid help, however, friends of Mrs. Edwards belonging to a social organization volunteered to assist; they came to defendants' home for the purpose of serving, did so and left. Plaintiff Dora Bylling and her husband, also friends of defendants, were invited to the reception and to remain for dinner; plaintiff neither helped serve in the afternoon nor was in any way connected with the social organization that did. The Byllings stayed on for dinner; six other persons were present—defendants, their daughter and her husband, and two others. Before they finished dinner, six after-dinner guests arrived. Defendants left the dinner table to greet and talk to them in the living room. Meanwhile, defendants' daughter, plaintiff and another woman cleared the table of dishes; they were neither asked to do this nor asked not to; they then began serving coffee and cookies using paper plates, carrying the same to the table from which defendants served their guests in the living room. Someone (unidentified) called from the kitchen that more paper plates were needed; defendants were standing in the dining area and Mrs. Edwards called to no one in particular, "They are in the garage." Plaintiff, who was in the kitchen but in the hearing of defendants, volunteered, "I will get them." Plaintiff walked through the door of the kitchen which opens into the garage. The garage is a one-car size, $9\frac{1}{2}$ feet high by $13\frac{1}{2}$ feet; a metal grease pan, 3 feet 10 inches long, 18 inches wide and one inch deep is kept on the floor at all times to catch oil from defendants' automobile; the car was not then in the garage but the grease pan was in its usual place; the bottom of the pan was entirely covered with grease of $1/16$ to $\frac{1}{4}$ inch; on the opposite side of the garage from the door was a wooden work bench on which the paper plates were stacked; the pan was so situated that a portion of it might or might not lie in the path of one walking from the kitchen door to the bench, depending upon to which end of the bench he walked. Defendants knew the pan was in its usual place; plaintiff had never before been in defendants' garage and did not know of the pan. The light in the garage was a strong 100 watt bulb on the wall about 15 inches to the

left of the door as one entered, about 6 feet, 11 inches above the floor; the light was on. As plaintiff walked toward the bench she "noticed some grease or a pool of grease" but did not see the pan; the grease she saw was generally in the area covered by the pan; plaintiff intended to step around the grease; while she was doing this she was looking in the direction of the bench; her foot shot out from under her and she suffered a fall. Plaintiff fell on her back and left side; she screamed and defendants hurried to the garage finding her lying close to the pan, beside it, not in it. They observed the grease pan and saw a long groove in the grease in the pan.

Appellant claims she was an invitee in defendants' home and that her fall resulted from their failure to use reasonable care to make the premises safe; but contends that in the event her status was only that of a licensee, defendants nevertheless had a duty to warn her of the grease pan; and further, that the same constituted a trap. She concedes she was a licensee on defendants' premises during the afternoon reception but submits that under the "doctrine of changing status," when she assisted defendants in serving their guests after dinner she became an invitee, relying on *Cain* v. *Friend,* 171 Cal.App. 2d 806 [341 P.2d 753], and *Edwards* v. *Hollywood Canteen,* 27 Cal.2d 802 [167 P.2d 729].

Whether one is a licensee or an invitee is a question of fact (*Laidlaw* v. *Perozzi,* 130 Cal.App.2d 169 [278 P.2d 523]); and the issue before us is whether, disregarding conflicting evidence and giving plaintiff's evidence all of the value to which it is legally entitled and indulging in every legitimate inference which may be drawn therefrom, there is evidence of sufficient substantiality to support a verdict for plaintiff (*Blumberg* v. *M. & T. Inc.,* 34 Cal.2d 226 [209 P.2d 1]; *Sockett* v. *Gottlieb,* 187 Cal.App.2d 760 [9 Cal.Rptr. 831]). Viewing the evidence in the light of the foregoing rule, we conclude it would not support a finding that plaintiff was an invitee; the record clearly reveals plaintiff's status to be that of a social guest and as such, a licensee on defendants' premises, and that defendants had no duty to warn her of the grease pan.

"It is the purpose for which a person is upon the premises of another which renders him an invitee rather than a licensee." (*Popejoy* v. *Hannon,* 37 Cal.2d 159, 169 [231 P.2d 484].) "As a general rule, if that purpose is one of common interest or mutual advantage the person is considered an invitee while a licensee is inferred where the object

is the mere pleasure or benefit of the visitor. (*Aguilar* v. *Riverdale Co-op. Creamery Assn.*, 104 Cal.App. 263 [285 P. 889]; *Demmer* v. *City of Eureka*, 78 Cal.App.2d 708 [178 P.2d 472].)'' (*Ashley* v. *Jones*, 126 Cal.App.2d 328, 332 [271 P.2d 918].) The ''common interest or mutual advantage'' required to make one an invitee is clearly found in those cases upon which appellant relies—in *Laidlaw* v. *Perozzi*, 130 Cal.App. 2d 169 [278 P.2d 523], plaintiff was a cohostess at a party which she and defendant were giving at the latter's home to which each had invited her friends and of which they shared the cost; plaintiff, a carpenter, in *Cain* v. *Friend*, 171 Cal.App. 2d 806 [341 P.2d 753], while he visited defendants' home in their absence on invitation, went on the premises for the specific purpose of performing gratuitous construction work on a room defendants were building; and in *Edwards* v. *Hollywood Canteen*, 27 Cal.2d 802 [167 P.2d 729], the purpose of plaintiff, a volunteer hostess, in going on the defendant's premises was to further the latter's business of providing entertainment for members of the armed forces.

But the instant facts do not fall into the category of ''invitee'' defined and discussed in the foregoing decisions; on the contrary, they appear to be similar to those found in the cases in which plaintiff's status as a licensee was inferred from her ''mere pleasure or benefit'' of being on the premises. (*Free* v. *Furr*, 140 Cal.App.2d 378 [295 P.2d 134]; *Ashley* v. *Jones*, 126 Cal.App.2d 328 [271 P.2d 918].) Mrs. Bylling's activities are similar to those of plaintiff in *Ashley* v. *Jones*, 126 Cal.App.2d 328 [271 P.2d 918]. The Ashleys, friends of defendants Jones, went to their home to consult them about the disposal of church property; having finished their consultation, defendants invited them to remain until New Years to meet friends they had invited to their home for a social evening. On that day before the arrival of the guests, plaintiff had been in the kitchen with Mrs. Jones helping her prepare the refreshments; Mrs. Jones remarked to her that it was getting late and she would not be able to finish in time to greet the guests; plaintiff volunteered to ''freshen up'' and answer the door for her; on the way to her bedroom to do so plaintiff slipped on a rug injuring herself. The court held that it was the purpose for which plaintiff was on the premises that rendered her no more than a licensee; however, it was not the benevolent feature of the Ashleys' visit that was determinative for although the court considered mutual interest

in church activity as a part of common social life, it concluded that *in any event* the injury occurred *after* the church business concluded when plaintiff was on the premises purely as a social guest who had stayed for a social gathering. It said at page 333: ''There is little, if any, evidence in this case to support the theory that Mrs. Ashley was an invitee. She and her husband were guests in this home and the only claimed mutual interest was a benevolent one, to discuss a church activity. In any event that matter had been thoroughly discussed and they intended to leave early the next morning. They had also been invited to, and did, remain over another night for the express purpose of a social gathering with their old friends. This accident happened while Mrs. Ashley was engaged in preparing for these social visitors and as she was hurrying to make herself ready to receive the guests who were momentarily expected.'' In *Free* v. *Furr*, 140 Cal.App.2d 378 [295 P.2d 134], the court found plaintiff's visit to defendant to take her a piece of cake was a social one unaffected by their subsequent conversation about dry cleaning, and held ''that the plaintiff was a mere gratuitous licensee'' (p. 383).

The Byllings, undoubtedly close friends of defendants, were invited to defendants' home as their guests to attend the reception and stay on for a family dinner; these were two social events they attended for their own pleasure, enjoyment and social interest. They stayed for dinner, sat down at the table and ate as guests; plaintiff helped neither to prepare the food nor serve it. However, several guests having arrived before dinner was over, plaintiff, entirely unsolicited, helped defendants' daughter and another clear the table, then took cookies and coffee into the dining area from where defendants served their guests, who obviously included plaintiff's husband. When more plates were needed and Mrs. Edwards announced there were more in the garage, plaintiff volunteered to go. There appears to be little difference between the activities of Dora Bylling, an invited dinner guest, helping the Edwards serve refreshments to their guests and going to the garage for more plates, and those of Mrs. Ashley, an invited guest, helping Mrs. Jones prepare refreshments for her guests and going to ''freshen up'' to meet them for her, in *Ashley* v. *Jones*, 126 Cal.App.2d 328 [271 P.2d 918]. In each case, plaintiff was on defendants' premises for her own pleasure and social benefit; each was an invited guest for the express purpose of attending a social affair being given by defendants; neither plaintiff was there to serve or work, although in

each instance, she later voluntarily performed a service, minor in nature, purely as an accommodation to defendants and incidental to the social purpose of her visit; in neither case was plaintiff's assistance to her hostess intended or planned in advance, but arose out of the early arrival of other guests; and in each, plaintiff was injured while "engaged in preparing for these social visitors" (p. 333).

Appellant argues that at some time during her stay on the premises she was transformed into a "catering service" and defendants "planned it that way from the beginning" when they invited her; but the record supports neither inference. She also claims that in putting the paper plates of cake and coffee on the dining room table she "helped to save respondents a lot of money" and her assistance was of "substantial economic benefit to them." The social purpose of plaintiff's visit having been established, whether her incidental activities might have been of economic benefit to defendants appears not to be material. Fourteen persons do not constitute as large a group as that invited to the Jones'—"some 15 or 20 people" (p. 330), and the activities appeared to be much the same; yet, in *Ashley* v. *Jones,* 126 Cal.App.2d 328 [271 P.2d 918], the court, finding Mrs. Ashley's purpose for being on the premises to be purely social, gave no consideration to what her activities might have been worth to defendants by way of economic benefit.

The rule defining the duty owed a licensee by owner of premises is found in *Oettinger* v. *Stewart,* 24 Cal.2d 133 [148 P.2d 19, 156 A.L.R. 1221], to be "that in cases involving injury resulting from active conduct, as distinguished from the condition of the premises, the landowner or possessor may be liable for failure to exercise ordinary care toward a licensee whose presence on the land is known or should reasonably be known to the owner or possessor" (p. 138). Thus, where no active negligence or "wilful and wanton injury" (*Powers* v. *Raymond,* 197 Cal. 126 [239 P. 1069]; *Hall* v. *Southern Calif. Edison Co., Ltd.,* 137 Cal. App. 449 [30 P.2d 1013]) is involved, the owner is not liable for injuries resulting from a condition of the premises other than one amounting to a trap (*Ashley* v. *Jones,* 126 Cal.App. 2d 328 [271 P.2d 918]); and a licensee must take the premises as he finds them in so far as any alleged defective condition thereof is concerned. (*Free* v. *Furr,* 140 Cal.App.2d 378 [295 P.2d 134]; *Palmquist* v. *Mercer,* 43 Cal.2d 92 [272 P.2d 26]; *Fisher* v. *General Petroleum Corp.,* 123 Cal.App.2d 770 [267

P.2d 841]; *Saba* v. *Jacobs,* 130 Cal.App.2d 717 [279 P.2d 826].)

Appellant seeks to establish a duty to warn her of the "dangerous" condition of the premises under *Herold* v. *P. H. Mathews Paint House,* 39 Cal.App. 489 [179 P. 414]; *Howard* v. *Howard,* 186 Cal.App.2d 622 [9 Cal.Rptr. 311]; and *Newman* v. *Fox West Coast Theatres,* 86 Cal.App.2d 428 [194 P.2d 706]. In *Herold* v. *P. H. Mathews Paint House,* 39 Cal.App. 489 [179 P. 414], defendant's agent, Boehme, escorted plaintiff's wife to the elevator; the car was on the floor above; without informing her of this fact he threw up the gate to the elevator and was reaching for the rope to lower the car when she stepped past him through the doorway into the open shaft. Holding that a landowner is under a duty to refrain only from causing injury to a licensee by his active negligence, the court concluded that Boehme's failure to warn Mrs. Herold "may reasonably be considered as part of the overt act of raising the gate, which the jury might have found, *under the evidence,* was done in such manner as to constitute an implied suggestion to Mrs. Herold that she might safely enter upon the elevator" (emphasis added) (p. 494). In *Howard* v. *Howard,* 186 Cal.App.2d 622 [9 Cal.Rptr. 311], three hours before plaintiff came on the premises, but after she was invited to his home, defendant, while cooking, spilled grease on the kitchen floor; he meant to clean it up but did not. Later defendant asked plaintiff, a guest, to prepare coffee, failing to warn her of the grease, in which she fell. Relying on *Herold* v. *P. H. Mathews Paint House,* 39 Cal.App. 489 [179 P. 414], the court on the issue of active negligence held that defendant's failure to warn her "may be reasonably considered a part of his overt act of requesting respondent to prepare the coffee" (p. 626). In *Newman* v. *Fox West Coast Theatres,* 86 Cal.App.2d 428 [194 P.2d 706], after plaintiff, a guest of the theatre, entered the premises there appeared on the floor of the rest room a foreign substance; defendant's manager was informed of this but did not immediately clean it up; in the meantime plaintiff slipped in it and fell. Pointing out that the authorities are not in accord in defining what constitutes "active negligence" and "passive negligence" (p. 432), the court, recognizing the extent of an owner's obligation to be the use of ordinary care and that a licensee is obliged to accept the premises as he finds them, held that plaintiff was "entitled to presume that the premises would remain in the relatively safe condition in which she found them

when she entered'' (p. 432), and where, after her entrance, there occurred on the premises a new condition involving a greater risk of injury, there also arose a new duty of defendant to rectify the condition or to warn the patron.

We find nothing in the Newman case, *supra,* which controls the situation at bar for the record reveals no new or changed condition which took place on defendants' premises while plaintiff was there. Unlike the change of the condition of the floor of the rest room in *Newman* v. *Fox West Coast Theatres,* 86 Cal.App.2d 428 [194 P.2d 706], long before Dora Bylling came on defendants' premises the grease pan had been in the same condition and same place in the garage where it had always been and had not been changed; applicable then is the general rule of the Newman case, *supra,* that plaintiff ''as a licensee, was obliged to accept the premises as she found them when she entered'' (p. 432). Nor do we find the Herold and Howard cases, *supra,* to be controlling, for they, unlike the one at bar, are cases of active negligence. Appellant argues that the defendants' failure to warn her of the grease pan together with Mrs. Edwards' announcement that the plates ''are in the garage'' constitute sufficient evidence from which the jury might, as in *Herold* v. *P. H. Mathews Paint House,* 39 Cal.App. 489 [179 P. 414] and *Howard* v. *Howard,* 186 Cal.App.2d 622 [9 Cal.Rptr. 311], infer active negligence. With this position we do not agree; the difficulty here presented in applying the rule of those cases is, that here there is no overt act of negligence of which any passive or negative failure to warn might be deemed a part, unless it can be said that Mrs. Edwards' statement that the plates ''are in the garage'' is alone sufficient. In the Howard case, *supra,* in addition to the express request of plaintiff to make coffee and his failure to warn her of the grease, there were in the evidence overt acts of defendant only a few hours before, but after inviting plaintiff on the premises—spilling the grease on the floor and neglecting to wipe it up—apprising him not only of the condition of the premises but that they had become more dangerous by virtue of his acts; in the Herold case, *supra,* in addition to the implied invitation to plaintiff to enter the elevator and his failure to warn that the car was not there, are defendant's acts of leading plaintiff's wife to the elevator, raising the door exposing the open shaft, and pulling the rope to lower the car. Viewing defendants' conduct as a whole to determine if there is any evidence of active negligence, as the court did in the Herold and Howard cases, *supra,* we find no

overt act or active conduct on defendants' part—the grease pan, common to all garages and in its proper place, had always been in defendants' garage; indeed the garage had not become more dangerous after plaintiff arrived; nothing occurred and defendants did nothing that would apprise either of them that their premises had become more dangerous; their only act was Mrs. Edwards' statement that the plates "are in the garage." If we are to adopt appellant's position, we must then hold that this statement alone is sufficient to constitute "the active negligence" or "overt act of negligence" found in the Howard and Herold cases, *supra*. We think active negligence is more; as stated in *Simpson* v. *Richmond,* 154 Cal.App.2d 27, at page 30 [315 P.2d 435], citing *Tesone* v. *Reiman,* 117 Cal.App. 2d 211 [255 P.2d 48] and *Yamauchi* v. *O'Neill,* 38 Cal.App. 2d 703 [102 P.2d 365], "Active negligence is the negligent conduct of active operations"; and in *Oettinger* v. *Stewart,* 24 Cal.2d 133 [148 P.2d 19, 156 A.L.R. 1221], citing Prosser on Torts (1941), 630, "active operations which the occupier carries on" (p. 138) and "active conduct" (p. 139) were contemplated by the court in laying down the rule of "active negligence."

Appellant argues that the overt act of which any passive or negative failure to warn might be deemed a part, is the implied invitation, in Mrs. Edwards' statement that the plates "are in the garage," that it was safe to go into the garage. This "implied invitation" is no different than that of Mrs. Jones to Mrs. Ashley, in her statement, "she would not be through in time to greet the guests" (p. 330), that it was safe to go into the hall (where she fell) on her way to her room to "freshen up." In *Ashley* v. *Jones,* 126 Cal.App.2d 328 [271 P.2d 918], Mrs. Jones simply stated to Mrs. Ashley that she would not be able to meet her guests, indicating to her if she wanted to do so it would be an accommodation to her, knowing that she would use the hallway to go to her room for that purpose; Mrs. Edwards announced to no one in particular where the plates were, indicating that if someone wanted to get them it would be an accommodation to her, knowing that whoever went for them would go into the garage. It is obvious, in holding Mrs. Ashley to be a licensee and that defendants violated no duty to her, even if it concluded that there was in Mrs. Jones' statement an "implied invitation" to go into the hallway and that it was safe to do so, the court did not consider the same to be any evidence of active negligence. As

in the case at bar, there was present in the evidence no other conduct, active or passive, on the part of defendants; the court, searching the record on the issue of her status, found no evidence that defendants had not exercised reasonable care.

A review of the record before us discloses no substantial evidence from which it may be inferred defendants "affirmatively" committed any act of negligence while plaintiff was on the premises (*Simpson* v. *Richmond,* 154 Cal.App.2d 27, 30 [315 P.2d 435]); neither does it show as in *Newman* v. *Fox West Coast Theatres,* 86 Cal.App.2d 428 [194 P.2d 706], that the condition of the premises changed after plaintiff entered; nor does it reveal, as in *Herold* v. *P. H. Mathews Paint House,* 39 Cal.App. 489 [179 P. 414] and *Howard* v. *Howard,* 186 Cal.App.2d 622 [9 Cal.Rptr. 311], the defendants' premises had become more dangerous as the result of any act or failure to act on their part making them "actively negligent" in failing to warn plaintiff of the grease pan which was in plain sight and was seen by plaintiff prior to her fall. We do find the facts to be similar to those in *Ashley* v. *Jones,* 126 Cal. App.2d 328 [271 P.2d 918], and the situation to be analogous to that found in *Fisher* v. *General Petroleum Corp.,* 123 Cal. App.2d 770 [267 P.2d 841]; *Free* v. *Furr,* 140 Cal.App.2d 378 [295 P.2d 134]; *Ward* v. *Oakley Co.,* 125 Cal.App.2d 840 [271 P.2d 536] and *Saba* v. *Jacobs,* 130 Cal.App.2d 717 [279 P.2d 826], where the passive condition was not sufficient to show active negligence on the part of the defendants.

As her last contention, appellant claims that there was evidence from which the jury could have determined that the grease pan amounted to a trap. It has been stated from time to time that the owner of premises has a duty not to injure a licensee thereon by means of a trap (*Ashley* v. *Jones,* 126 Cal.App.2d 328 [271 P.2d 918]; *Yazzolino* v. *Jones,* 153 Cal.App.2d 626 [315 P.2d 107]); however we find no holding directly based on this rule. It is apparent from *Nelsen* v. *Jensen,* 177 Cal.App.2d 270 [2 Cal.Rptr. 180] that a trap involves a "concealed danger"; and Prosser on Torts, 2d edition, defines it as a "concealed dangerous condition(s)" (p. 499). In *Loftus* v. *Dehail,* 133 Cal. 214, the court described the deceptive nature of a trap at page 218 [65 P. 379] : "[T]he complaint showed a veritable trap,—a cesspool, open and unguarded, yet with its surface covered with a layer of deceptive earth to a level with the adjacent land." But there is nothing in the evidence from which it might be inferred that a concealed object or deceptive condition existed in defendants'

garage; and contrary to appellant's claim that the shadow she cast when she entered the garage operated to increase the danger, the record is barren of any evidence to that effect. It does not mention a shadow or any facts from which it may be inferred that one was cast or if so, its effect on plaintiff's awareness of the grease. On the contrary, plaintiff herself testified that as she walked toward the bench she noticed "some grease or pool of grease," that although failing to discern the pan, the grease she saw was generally in the area covered by the pan; that she "intended to step around the grease," and that while she was doing so she was looking in the direction of the bench and her foot shot out from under her marking a long groove in the grease in the pan, and fell. It is obvious from her undisputed evidence that the grease in which she stepped was in her plain sight, it was not concealed from her, she saw and knew what it was, she testified of no shadow that obscured her view of it, she knew of the existence of the grease at the time she came upon it, and intended to avoid it.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied August 4, 1961, and appellant's petition for a hearing by the Supreme Court was denied September 13, 1961.