[Civ. No. 7035. Fourth Dist. Feb. 26, 1963.]

ELSIE HUSELTON, Plaintiff and Appellant, v. AMON UNDERHILL et al., Defendants and Respondents.

Vinnedge, Lance & Glenn and Harold J. Lance for Plaintiff and Appellant.

Wilson & Wilson and Caywood J. Borror for Defendants and Respondents.

MONROE, J., pro tem.*—The plaintiff and appellant, Elsie Huselton, brought this action to recover damages for personal injuries suffered by her when she fell on May 21, 1959, upon premises controlled by the defendants and respondents. The action was tried before a jury; a motion for a directed verdict was denied, and the jury brought in a verdict in favor of the plaintiff. The defendants then moved for a judgment notwithstanding the verdict, or in the alternative for a new trial, in accordance with the provisions of section 629, Code of Civil Procedure. The court granted the motion for judgment notwithstanding the verdict and also granted the motion for new trial; the latter order, however, being upon condition that it would not be effective unless the

---

*Assigned by Chairman of Judicial Council.

judgment notwithstanding the verdict was vacated. The plaintiff appeals.

The facts involved are that the respondents held title as trustees to property in the City of Ontario, upon which was located the "Country Church." Mr. Underhill acted as the minister of that church. No question is raised as to the status of the Underhills as being the parties responsible for the premises in question.

The church building faces Virginia Street in Ontario and between the sidewalk of Virginia Street and the front of the church is a lawn intersected by a sidewalk. To the north of the church building is a recreation hall and to the north of that hall is a residence building which Mrs. Huselton and her husband occupied. Between the sidewalk of Virginia Street and the front of the recreation hall and the house is a paved area approximately 80 feet wide which was used as a parking lot for the use of members of the congregation when attending church. The Huseltons were accustomed to parking their automobile in the northerly portion of the parking lot. At the south end of the parking lot two telephone poles had been partially imbedded in the pavement to keep the parked automobiles from running onto the church lawn. Mr. Huselton acted as caretaker and handyman around the church, in return for which he was given the use of the residence property. Such work as he did was at odd times as he was also employed. The Huseltons owned a residence property to the south of the church, which property was rented. They had occupied the residence to the north for approximately five years.

Shortly before the day of the accident, Mr. Underhill had discussed with Mr. Huselton plans for an addition to the church structure. The additional building would be extended a few feet into the rear southerly portion of the parking lot. In anticipation of the work, Mr. Huselton had removed two trees from the church lawn and transplanted them to the home of his daughter. On the afternoon of May 21, about 4 p.m., he undertook to remove the rear telephone pole from the paving as it would be in the way of the proposed construction. He succeeded in prying it out with a crowbar and permitted it to roll a few feet to the north. As the poles were imbedded in the paving the exposed portion of them was painted white, but it appears that when the pole was removed and rolled over, the unpainted side remained up. Mr. Huselton stated that he did not tell anyone that

he had removed the pole and apparently neither Mrs. Huselton nor Mr. Underhill knew that it had been done.

On the evening of May 21, the appellant had been away from her home, babysitting for one of her customers. When she returned to the neighborhood, about 10 p.m., she discovered that the house located to the south of the church and owned by the Huseltons was on fire. Fire equipment was present and a crowd estimated at several hundred people were in the area. The fire was serious and resulted in the loss of several lives. The automobile in which Mrs. Huselton was riding approached as near as possible to the scene of the fire and she proceeded on foot. She went into the yard of the church and stood on the lawn among the crowd that was gathered there. She testified that she saw Mr. Underhill in the crowd but did not speak to him; it was his testimony that he did not observe her. While she was in the crowd her husband approached her and they conversed for several minutes. He left her standing in the church yard. Both Mr. Huselton and Mrs. Huselton so testified. Nothing was said by Mrs. Huselton as to what she intended to do.

After her husband had left, Mrs. Huselton decided to go to her house and call her daughter by telephone. Instead of going by the sidewalk to the front of the parking lot, she cut across the rear of the parking lot, which was not lighted. She fell over the pole which her husband had removed, and received the injuries complained of. She explained that she did not go by way of the sidewalk because several automobiles were parked on the sidewalk area. There was no church activity that night and hence no light in the parking area.

Mr. Huselton testified on behalf of his wife. He stated that he had not posted any warning of any kind concerning the pole which he had moved and that he told no one of it and that he had given his wife no warning of it. He explained that "no one was supposed to go through that part of the parking lot."

It is conceded that the legal status of Mrs. Huselton on the premises was that of a licensee. The basis of her claim was that her husband was the agent of the respondent and that by reason of his negligence she received injuries for which the Underhills should be held liable.

The trial court held that the motion for directed verdict should have been granted and therefore granted judgment notwithstanding the verdict. The court based its ruling upon the decision in *Bylling* v. *Edwards,* 193 Cal.App.2d 736,

742, 746 [14 Cal.Rptr. 760]. This decision was rendered by the District Court of Appeal, Second District, in July 1961, and petition for hearing was denied by the Supreme Court. That decision appears to be determinative of all the questions raised on this appeal. The facts involved were that the plaintiff was a social guest in the house of the defendants. Refreshments were being served and they were using paper plates. Some one stated that they had run out of paper plates and the defendant wife called out that they were on the bench in the garage. The plaintiff volunteered to get them, went into the garage, slipped on a grease pan on the floor, and was injured. Her status was correctly held to be that of a licensee. ■ The court stated, among other things:

"The rule defining the duty owed a licensee by owner of premises is found in *Oettinger* v. *Stewart,* 24 Cal.2d 133 [148 P.2d 19, 156 A.L.R. 1221] to be 'that in cases involving injury resulting from active conduct, as distinguished from the condition of the premises, the landowner or possessor may be liable for failure to exercise ordinary care toward a licensee whose presence on the land is known or should reasonably be known to the owner or possessor' (p. 138). Thus, where no active negligence or 'wilful and wanton injury' [citations] is involved, the owner is not liable for injuries resulting from a condition of the premises other than one amounting to a trap [citation]; and a licensee must take the premises as he finds them in so far as any alleged defective condition thereof is concerned. [Citations.]''

. In the opinion in the *Bylling* case the court took occasion to distinguish the cases of *Herold* v. *P. H. Mathews Paint House,* 39 Cal.App. 489 [179 P. 414]; *Howard* v. *Howard,* 186 Cal.App.2d 622 [9 Cal.Rptr. 311]; *Newman* v. *Fox West Coast Theatres,* 86 Cal.App.2d 428 [194 P.2d 706]; and *Ashley* v. *Jones,* 126 Cal.App.2d 328 [271 P.2d 918]. [3] The distinction is to be found in the rule set forth in 35 California Jurisprudence 2d at page 611 as follows:

". . . Many courts, in imposing this duty of reasonable care toward trespassers and licensees, have drawn a distinction between active and passive negligence, and have limited the reasonable care test to overt acts of negligence. This state has adopted that distinction and imposed a duty to exercise reasonable care toward known licensees or trespassers, so far as active operations are concerned.''

With regard to an invitee, the proprietor of the prem-

ises is required to exercise care that the premises be in safe condition, while on the other hand a licensee takes the premises as he finds them. A proprietor is therefore not to be held liable except when, with knowledge of the presence of the licensee, he is guilty of some act of negligence which results in injury. When, therefore, a proprietor requests the licensee to do some act or enter some portion of the premises which happen to be dangerous, the failure to warn may constitute negligence, but the mere knowledge of the presence of the licensee on the premises is not sufficient to place upon the property owner the duty of warning with respect to each and every defect or condition which might cause injury. If so held, it would be for all practical purposes to change the status of a licensee to that of an invitee immediately upon his presence becoming known.

 It is further contended that the condition caused by changing the location of the pole constituted a "trap." In the *Bylling* case, at page 746, the court discussed the same contention as follows:

"As her last contention, appellant claims that there was evidence from which the jury could have determined that the grease pan amounted to a trap. It has been stated from time to time that the owner of premises has a duty not to injure a licensee thereon by means of a trap [citations]; however we find no holding directly based on this rule. It is apparent from *Nelson* v. *Jensen*, 177 Cal.App.2d 270 [2 Cal.Rptr. 180] that a trap involves a 'concealed danger'; and Prosser on Torts, 2d edition, defines it as a 'concealed dangerous condition(s)' (p. 499). In *Loftus* v. *Dehail*, 133 Cal. 214 [65 P. 379], the court described the deceptive nature of a trap at page 218: '[T]he complaint showed a veritable trap,—a cesspool, open and unguarded, yet with its surface covered with a layer of deceptive earth to a level with the adjacent land.' But there is nothing in the evidence from which it might be inferred that a concealed object or deceptive condition existed in defendants' garage; and contrary to appellant's claim that the shadow she cast when she entered the garage operated to increase the danger, the record is barren of any evidence to that effect."

It is to be noted that in those cases distinguished in the *Bylling* opinion and relied upon by appellant herein, in each instance there was some conduct upon the part of the property owner which induced the injured party to go into the area

where the dangerous condition existed. In each case it could properly be held that directing or knowingly permitting the licensee to go into such area without giving some warning of the danger constituted an act of negligence as distinct from the mere condition of the property. In the instant case no one knew that Mrs. Huselton was about to cross the rear, darkened portion of the parking lot. Therefore, there arose no duty to warn her of a condition that would have been entirely apparent had the area been lighted. Therefore, there was no evidence in the case that would justify a finding of negligence either on the part of Mr. or Mrs. Underhill or the appellant's husband. The court therefore properly granted the judgment notwithstanding the verdict.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied March 22, 1963.