[Civ. No. 8432.   Fourth Dist., Div. One.   May 29, 1967.]

OSCAR B. ANDERSON, JR., Plaintiff and Appellant, v. JOSEPHINE M. ANDERSON, Defendant and Respondent.

Lightner & Hilmen and Richard T. Hilmen, Jr., for Plaintiff and Appellant.

Gray, Cary, Ames & Frye and Rudi M. Brewster for Defendant and Respondent.

WHELAN, J.—Plaintiff appeals from a judgment dismissing his action with prejudice based upon the granting of defendant's motion for nonsuit following plaintiff's opening statement.

## The Opening Statement

The opening statement, with additions and elaborations stated after defendant had made the motion for nonsuit, covered the following assumed facts:

In the evening on September 8, 1963, plaintiff, accompanied by family friends, went to the home of his sister-in-law, the defendant, who invited plaintiff to go into a swimming pool on her property.[1]

The swimming pool had been constructed by defendant and her deceased husband during the 1950's. It was rectangular in shape, with its longer sides orientated so that the deepest portion was at the east end where there was a diving board. At the shallower west end there was a difference in the depth of the pool, caused by the fact that in the construction of the pool sub-surface granite had been encountered which was left in place in the southwest corner of the floor of the pool. That mass of rock had been covered over with the same material as the rest of the floor of the pool. The result was the presence of a submerged ledge which dropped off sharply at its north edge so that the water in the shallow end of the pool was two or three feet deeper north of the ledge than was the water immediately over the ledge.

Defendant knew of the presence of the submerged ledge and did not warn plaintiff of its presence. Plaintiff did not know of the presence of the ledge or of the difference in depth of the water in the shallower end of the pool.

It was impossible on the night in question to see the ledge, the difficulty having been increased by the use of artificial lighting. Spotlights east of the pool shone onto a person standing at the west end of the pool and their light also was reflected from the water.

---

[1] Counsel's statement was that plaintiff was "permitted to or invited into the pool." In argument he mentioned "negligence in impliedly inviting him to go into the pool."

The water at the shallower end of the pool appeared to have a depth uniform from north to south of about four or five feet.

Plaintiff changed into bathing dress in a cabana west of the pool. He came to the poolside at that end, saw people standing in the water at what was the deeper side of the shallower end of the pool, saw what he thought was deep water, and made a shallow dive from the edge of the pool into what proved to be the shallower side of the shallower end, where he struck the submerged ledge. Plaintiff knew that the west end was the shallower end of the pool; because of the people who were standing in the deeper side of that end of the pool, plaintiff believed the water into which he dove was equally deep.

The plaintiff was hurt and paralyzed as a result.

When the pool was being constructed, defendant was warned that she was creating a hazardous condition.

Plaintiff conceded that his status with relation to defendant's property was that of gratuitous licensee.

### PLAINTIFF'S CONTENTIONS

Plaintiff contends:

That California law does not exclude the application of the rule stated in section 342, Restatement of the Law of Torts, which would permit recovery by plaintiff.

That the dangerous condition of the swimming pool constituted a trap on defendant's premises which made her liable to a licensee injured as a result of accidental contact with such dangerous condition.

That regardless of the existence of a trap or the applicability of section 342 of the Restatement, defendant's express invitation to plaintiff to enter the pool, coupled with her failure to warn of the concealed, dangerous condition of which she had knowledge, constituted active negligence.

### SECTION 342, RESTATEMENT OF THE LAW OF TORTS

Section 342 is as follows:

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

"(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

"(b) invites or permits them to enter or remain upon the land, without exercising reasonable care

"(i) to make the condition reasonably safe, or

"(ii) to warn them of the condition and the risk involved therein."

Defendant cites the following cases to support the proposition that the rule of section 342 has been rejected in California: *Fisher* v. *General Petroleum Corp.*, 123 Cal.App.2d 770, 780 [267 P.2d 841]; *Hansen* v. *Richey*, 237 Cal.App.2d 475, 479 [46 Cal.Rptr. 909]; *Ward* v. *Oakley Co.*, 125 Cal. App.2d 840, 844-845 [271 P.2d 536].

Whether language in such decisions as *Chafor* v. *City of Long Beach*, 174 Cal. 478, 481, 491 [163 P. 670, Ann.Cas. 1918D 106, L.R.A. 1917E 685], and *Malloy* v. *Hibernia Sav. & Loan Soc.*, 3 Cal.Unrep. 76 [21 P. 525], are inconsistent with defendant's position we shall not discuss.

We consider, however, that a determination of this appeal does not require the application of the bald declaration of the Restatement rule.

### THE THEORY OF TRAP

William Cobbett, traveling through rural England in 1822, saw this posted in a garden: "Paradise Place: Spring guns and steel traps are set here."[2]

We think that defendant is right that the theory of a trap as the basis for liability of a landowner dealt originally with the sort of trap mentioned in Cobbett's sign. The lack of definiteness in the application of the term to any other situation makes its use argumentative and unsatisfactory.

We shall not engage in argument as to whether the condition of the swimming pool constituted a trap.

### THE THEORY OF ACTIVE NEGLIGENCE

Defendant quotes *Simpson* v. *Richmond*, 154 Cal.App.2d 27, 29-30 [315 P.2d 435], to this effect:

"Active negligence is the negligent conduct of active operations."

Under plaintiff's theory, defendant engaged in active negligence by specifically inviting plaintiff to use the pool without advising him of the presence of the underwater ledge. His authorities in support of that contention are *Hansen* v. *Richey, supra*, 237 Cal.App.2d 475; *Howard* v. *Howard*, 186 Cal.App.2d 622 [9 Cal.Rptr. 311]; *Herold* v. *P. H. Mathews Paint House*, 39 Cal.App. 489 [179 P. 414]; and *Newman* v. *Fox West Coast Theatres*, 86 Cal.App.2d 428 [194 P.2d 706].

The *Newman* case seems to have been decided on the narrow

[2]Cobbett, "Rural Rides," Vol. 1, p. 249.

ground that the hazardous condition was created after plaintiff came upon the premises.

In *Hansen* v. *Richey, supra,* 237 Cal.App.2d 475, the court arrived at the conclusion that no single act of defendant was negligent, but that from a conspectus of all the circumstances a jury question was presented as to whether defendant's actions after the plaintiff's arrival constituted negligence.

### The Duty Owed By Defendant To Plaintiff

■ A decision in this case depends upon the answer to the following question: Does the lawful occupier of land owe a duty to warn a social guest (a licensee) of the presence of a potentially hazardous condition when the following circumstances are found: the hazardous condition exists in a part of the land intended for a specific use; the occupier knows of the hazard and has created or maintained it, and has no reason to believe that the licensee is aware of the existence of the hazardous condition and he is in fact unaware of it; the guest is invited by the occupier to use that part of the land for the specific use intended; the presence of the dangerous condition is then not apparent because of conditions brought about by the occupier of the land; it is reasonably foreseeable that the licensee will encounter the hazard in making reasonable use of that part of the property for the specific purpose intended?

We believe the question must be answered in the affirmative. The breach of such a duty is actionable negligence.

### Discussion

Under well-recognized rules, we must determine whether there is any evidence in the statement of assumed facts to support a verdict in favor of plaintiff, giving plaintiff's evidence all the value to which it is legally entitled, disregarding the inconsistencies, and indulging in every legitimate inference which may be drawn from that evidence. (*O'Keefe* v. *South End Rowing Club,* 64 Cal.2d 729, 733 [51 Cal.Rptr. 534, 414 P.2d 830]; *Gallegos* v. *Union-Tribune Publishing Co.,* 195 Cal.App.2d 791, 796 [16 Cal.Rptr. 185].)

Thus we must assume the truth of all the matters stated. We must ignore the matters contained in defendant's opening statement.[3]

We must also disregard the possible negligence of plaintiff

[3]The motion for nonsuit was not made until after defendant had made an opening statement to the jury. No question was raised whether this was ''After the plaintiff has completed his opening statement'' within the meaning of section 581c.

in attempting a dive into the shallow end of the pool, regardless of the knowledge of the presence of the ledge, unless such negligence appears as a matter of law. We think the question of contributory negligence is a factual one because of the inferences to be drawn in plaintiff's favor. It is possible that in a trial the uncontradicted evidence might show contributory negligence as a matter of law.

Because plaintiff's statement came within the theoretical framework of our hypothetical question, it stated a case of possible liability.

Judgment reversed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied June 15, 1967.