[S. F. No. 22583. In Bank. Aug. 8, 1968.]

JAMES DAVIS ROWLAND, JR., Plaintiff and Appellant,
v. NANCY CHRISTIAN, Defendant and Respondent.

Jack K. Berman for Plaintiff and Appellant.

Healy & Robinson and John J. Healy for Defendant and Respondent.

PETERS, J.—Plaintiff appeals from a summary judgment for defendant Nancy Christian in this personal injury action.

In his complaint plaintiff alleged that about November 1, 1963, Miss Christian told the lessors of her apartment that the knob of the cold water faucet on the bathroom basin was cracked and should be replaced; that on November 30, 1963, plaintiff entered the apartment at the invitation of Miss Christian; that he was injured while using the bathroom fixtures, suffering severed tendons and nerves of his right hand; and that he has incurred medical and hospital expenses. He further alleged that the bathroom fixtures were dangerous, that Miss Christian was aware of the dangerous condition, and that his injuries were proximately caused by the negligence of Miss Christian. Plaintiff sought recovery of his medical and hospital expenses, loss of wages, damage to his clothing, and $100,000 general damages. It does not appear from the complaint whether the crack in the faucet handle was obvious to an ordinary inspection or was concealed.

Miss Christian filed an answer containing a general denial except that she alleged that plaintiff was a social guest and admitted the allegations that she had told the lessors that the faucet was defective and that it should be replaced. Miss Christian also alleged contributory negligence and assumption of the risk. In connection with the defenses, she alleged that plaintiff had failed to use his "eyesight" and knew of the condition of the premises. Apart from these allegations, Miss Christian did not allege whether the crack in the faucet handle was obvious or concealed.

Miss Christian's affidavit in support of the motion for summary judgment alleged facts showing that plaintiff was a social guest in her apartment when, as he was using the bathroom, the porcelain handle of one of the water faucets broke in his hand causing injuries to his hand and that plaintiff had used the bathroom on a prior occasion. In opposition to the motion for summary judgment, plaintiff filed an affidavit stating that immediately prior to the accident he told Miss Christian that he was going to use the bathroom facilities, that she had known for two weeks prior to the accident that the faucet handle that caused injury was cracked, that she warned the manager of the building of the condition, that nothing was done to repair the condition of the handle, that she did not say anything to plaintiff as to the condition of the handle, and that when plaintiff turned off the faucet the handle broke

in his hands severing the tendons and medial nerve in his right hand.

The summary judgment procedure is drastic and should be used with caution so that it does not become a substitute for an open trial. This court in two recent cases has stated: "Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor . . . and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." (*Stationers Corp.* v. *Dun & Bradstreet, Inc.*, 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785] ; *Joslin* v. *Marin Municipal Water Dist.*, 67 Cal.2d 132, 146-147 [60 Cal.Rptr. 377, 429 P.2d 889].) A defendant who moves for a summary judgment must prevail on the basis of his own affidavits and admissions made by the plaintiff, and unless the defendant's showing is sufficient, there is no burden on the plaintiff to file affidavits showing he has a cause of action or to even file counteraffidavits at all. A summary judgment for defendant has been held improper where his affidavits were conclusionary and did not show that he was entitled to judgment and where the plaintiff did not file any counteraffidavits. (*de Echeguren* v. *de Echeguren*, 210 Cal. App.2d 141, 146-149 [26 Cal.Rptr. 562] ; *Southern Pac. Co.* v. *Fish*, 166 Cal.App.2d 353, 362 et seq. [333 P.2d 133].)

In the instant case, Miss Christian's affidavit and admissions made by plaintiff show that plaintiff was a social guest and that he suffered injury when the faucet handle broke; they do not show that the faucet handle crack was obvious or even nonconcealed. Without in any way contradicting her affidavit or his own admissions, plaintiff at trial could establish that she was aware of the condition and realized or should have realized that it involved an unreasonable risk of harm to him, that defendant should have expected that he would not discover the danger, that she did not exercise reasonable care to eliminate the danger or warn him of it, and that he did not know or have reason to know of the danger. Plaintiff also could establish, without contradicting Miss Christian's affidavit or his admissions, that the crack was not obvious and was concealed. Under the circumstances, a summary judgment is proper in this case only if, after proof of such facts, a judgment would be required as a matter of law for Miss Christian. The record supports no such conclusion.

Section 1714 of the Civil Code provides: "Every one is responsible, not only for the result of his willful

acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. . . .'' This code section, which has been unchanged in our law since 1872, states a civil law and not a common law principle. (*Fernandez* v. *Consolidated Fisheries, Inc.*, 98 Cal.App.2d 91, 96 [219 P. 2d 73].)

 Nevertheless, some common law judges and commentators have urged that the principle embodied in this code section serves as the foundation of our negligence law. Thus in a concurring opinion, Brett, M. R. in *Heaven* v. *Pender* (1883) 11 Q.B.D. 503, 509, states: ''whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances he would cause danger of injury to the person or property of the other. a duty arises to use ordinary care and skill to avoid such danger.''

California cases have occasionally stated a similar view: ''All persons are required to use ordinary care to prevent others being injured as the result of their conduct.'' (*Hilyar* v. *Union Ice Co.*, 45 Cal.2d 30, 36 [286 P.2d 21] ; *Warner* v. *Santa Catalina Island Co.*, 44 Cal.2d 310, 317 [282 P.2d 12] ; see also *Green* v. *General Petroleum Corp.*, 205 Cal. 328, 333 [270 P. 952, 60 A.L.R. 475] ; *Perkins* v. *Blauth,* 163 Cal. 782, 786 [127 P. 50] ; *McCall* v. *Pacific Mail S. S. Co.*, 123 Cal. 42, 44 [55 P. 706] ; *Edler* v. *Sepulveda Park Apts.*, 141 Cal.App. 2d 675 680 [297 P.2d 508] ; *Copfer* v. *Golden*, 135 Cal.App.2d 623, 627-628 [288 P.2d 90] ; cf. *Dillon* v. *Legg*, 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912].) Although it is true that some exceptions have been made to the general principle that a person is liable for injuries caused by his failure to exercise reasonable care in the circumstances, it is clear that in the absence of statutory provision declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception should be made unless clearly supported by public policy. (*Lipman* v. *Brisbane Elementary School Dist.*, 55 Cal.2d 224, 229-230 [11 Cal.Rptr. 97, 359 P.2d 465] ; *Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211, 213 et seq. [11 Cal.Rptr. 89, 359 P.2d 457] ; *Malloy* v. *Fong,* 37 Cal.2d 356, 366 [232 P.2d 241].)

A departure from this fundamental principle involves the

balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved. (Cf. *Schwartz* v. *Helms Bakery Ltd.*, 67 Cal.2d 232, 237, fn. 3 [60 Cal.Rptr. 510, 430 P.2d 68]; *Hergenrether* v. *East*, 61 Cal.2d 440, 443-445 [39 Cal.Rptr. 4, 393 P.2d 164]; *Merrill* v. *Buck*, 58 Cal.2d 552, 561-562 [25 Cal.Rptr. 456, 375 P.2d 304]; *Chance* v. *Lawry's, Inc.*, 58 Cal.2d 368, 377 [24 Cal.Rptr. 209, 374 P.2d 185]; *Lipman* v. *Brisbane Elementary School Dist.*, *supra*, 55 Cal.2d 224, 229-230; *Stewart* v. *Cox*, 55 Cal.2d 857, 863 [13 Cal.Rptr. 521, 362 P.2d 345]; *Biakanja* v. *Irving*, 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358]; *Wright* v. *Arcade School Dist.*, 230 Cal.App.2d 272, 278 [40 Cal.Rptr. 812]; *Raymond* v. *Paradise Unified School Dist.*, 218 Cal.App.2d 1, 8 [31 Cal.Rptr. 847]; Prosser on Torts (3d ed. 1964) pp. 148-151; 2 Harper and James, The Law of Torts (1956) pp. 1052, 1435 et seq.)

One of the areas where this court and other courts have departed from the fundamental concept that a man is liable for injuries caused by his carelessness is with regard to the liability of a possessor of land for injuries to persons who have entered upon that land. It has been suggested that the special rules regarding liability of the possessor of land are due to historical considerations stemming from the high place which land has traditionally held in English and American thought, the dominance and prestige of the landowning class in England during the formative period of the rules governing the possessor's liability, and the heritage of feudalism. (2 Harper and James, The Law of Torts, *supra*, p. 1432.)

The departure from the fundamental rule of liability for negligence has been accomplished by classifying the plaintiff either as a trespasser, licensee, or invitee and then adopting special rules as to the duty owed by the possessor to each of the classifications. Generally speaking a trespasser is a person who enters or remains upon land of another without a privilege to do so; a licensee is a person like a social guest who is not an invitee and who is privileged to enter or remain upon land by virtue of the possessor's consent, and an invitee is a

business visitor who is invited or permitted to enter or remain on the land for a purpose directly or indirectly connected with business dealings between them. (*Oettinger* v. *Stewart*, 24 Cal.2d 133, 136 [148 P.2d 19, 156 A.L.R. 1221].)

Although the invitor owes the invitee a duty to exercise ordinary care to avoid injuring him (*Oettinger* v. *Stewart*, *supra*, 24 Cal.2d 133, 137; *Hinds* v. *Wheadon*, 19 Cal.2d 458, 460-461 [121 P.2d 724]), the general rule is that a trespasser and licensee or social guest are obliged to take the premises as they find them insofar as any alleged defective condition thereon may exist, and that the possessor of the land owes them only the duty of refraining from wanton or willful injury. (*Palmquist* v. *Mercer*, 43 Cal.2d 92, 102 [272 P.2d 26]; see *Oettinger* v. *Stewart*, *supra*, 24 Cal.2d 133, 137 et seq.) The ordinary justification for the general rule severely restricting the occupier's liability to social guests is based on the theory that the guest should not expect special precautions to be made on his account and that if the host does not inspect and maintain his property the guest should not expect this to be done on his account. (See 2 Harper and James, The Law of Torts, *supra*, p. 1477.)

An increasing regard for human safety has led to a retreat from this position, and an exception to the general rule limiting liability has been made as to active operations where an obligation to exercise reasonable care for the protection of the licensee has been imposed on the occupier of land. (*Oettinger* v. *Stewart*, *supra*, 24 Cal.2d 133, 138-139 [disapproving contrary cases]; see Rest.2d Torts, § 341; Prosser on Torts, *supra*, pp. 388-389.) In an apparent attempt to avoid the general rule limiting liability, courts have broadly defined active operations, sometimes giving the term a strained construction in cases involving dangers known to the occupier.

Thus in *Hansen* v. *Richey*, 237 Cal.App.2d 475, 481 [46 Cal.Rptr. 909], an action for wrongful death of a drowned youth, the court held that liability could be predicated not upon the maintenance of a dangerous swimming pool but upon negligence "in the active conduct of a party for a large number of youthful guests in the light of knowledge of the dangerous pool."[1] In *Howard* v. *Howard*, 186 Cal.App.2d

[1] Rather than characterizing the finding of active negligence in *Hansen* v. *Richey*, *supra*, 237 Cal.App.2d 475, 481, as a strained construction of that term perhaps the opinion should be characterized as "an ingenious process of finding active negligence in addition to the known dangerous condition, . . ." (See, Witkin, Summary of Cal. Law (1967 Supp.) Torts, § 255, pp. 535-536.)

622, 625 [9 Cal.Rptr. 311], where plaintiff was injured by slipping on spilled grease, active negligence was found on the ground that the defendant requested the plaintiff to enter the kitchen by a route which he knew would be dangerous and defective and that the defendant failed to warn her of the dangerous condition. (Cf. *Anderson* v. *Anderson,* 251 Cal. App.2d 409, 413 [59 Cal.Rptr. 342] ; *Herold* v. *P. H. Mathews Paint House,* 39 Cal.App. 489, 493-494 [179 P. 414].) In *Newman* v. *Fox West Coast Theatres,* 86 Cal.App.2d 428, 431-433 [194 P.2d 706], the plaintiff suffered injuries when she slipped and fell on a dirty washroom floor, and active negligence was found on the ground that there was no water or foreign substances on the washroom floor when plaintiff entered the theater, that the manager of the theater was aware that a dangerous condition was created·after plaintiff's entry, that the manager had time to clean up the condition after learning of it, and that he did not do so or warn plaintiff of the condition.

Another exception to the general rule limiting liability has been recognized for cases where the occupier is aware of the dangerous condition, the condition amounts to a concealed trap, and the guest is unaware of the trap. (See *Loftus* v. *Dehail,* 133 Cal. 214, 217-218 [65 P. 379] ; *Anderson* v. *Anderson, supra,* 251 Cal.App.2d 409, 412; *Hansen* v. *Richey, supra,* 237 Cal.App.2d 475, 479-480; *Huselton* v. *Underhill,* 213 Cal. App.2d 370, 374-376 [28 Cal.Rptr. 822] ; *Bylling* v. *Edwards,* 193 Cal.App.2d 736, 746-747 [14 Cal.Rptr. 760] ; *Yazzolino* v. *Jones,* 153 Cal.App.2d 626, 636 [315 P.2d 107] ; *Ashley* v. *Jones,* 126 Cal.App.2d 328, 332 [271 P.2d 918].) In none of these cases, however, did the court impose liability on the basis of a concealed trap; in some liability was found on another theory, and in others the court concluded that there was no trap. A trap has been defined as a "concealed" ·danger, a danger with a deceptive appearance of safety. (E.g., *Hansen* v. *Richey, supra,* 237 Cal.App.2d 475, 480.) It has also been defined as something akin to a spring gun or steel trap. (*Anderson* v. *Anderson, supra,* 251 Cal.App.2d 409, 412.) In the latter case it is pointed out that the lack of definiteness in the application of the term "trap" to any other situation makes its use argumentative and unsatisfactory.

The cases dealing with the active negligence and the trap exceptions are indicative of the subtleties and confusion which have resulted from application of the common law principles

governing the liability of the possessor of land. Similar confusion and complexity exist as to the definitions of trespasser, licensee, and invitee. (See *Fernandez* v. *Consolidated Fisheries, Inc., supra,* 98 Cal.App.2d 91, 96.)

In refusing to adopt the rules relating to the liability of a possessor of land for the law of admiralty, the United States Supreme Court stated: ''The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards 'imposing on owners and occupiers a single duty of reasonable care in all the circumstances.' '' (Footnotes omitted.) (*Kermarec* v. *Compagnie Generale,* 358 U.S. 625, 630-631 [3 L.Ed.2d 550, 554-555, 79 S.Ct. 406]; see also *Jones* v. *United States,* 362 U.S. 257, 266 [4 L.Ed.2d 697, 705, 80 S.Ct. 725, 78 A.L.R.2d 233]; 2 Harper and James, The Law of Torts, *supra,* 1430 et seq.; Prosser, *Business Visitors and Invitees,* 26 Minn.L.Rev. 573; Marsh, *The History and Comparative Law of Invitees, Licensees and Trespassers,* 69 L.Q.Rev. 182, 359.)

The courts of this state have also recognized the failings of the common law rules relating to the liability of the owner and occupier of land. In refusing to apply the law of invitees, licensees, and trespassers to determine the liability of an independent contractor hired by the occupier, we pointed out that application of those rules was difficult and often abitrary. (*Chance* v. *Lawry's, Inc., supra,* 58 Cal.2d 368, 376-379; cf. *Hall* v. *Barber Door Co.,* 218 Cal. 412, 419 [23 P.2d 279]; *Donnelly* v. *Hufschmidt,* 79 Cal. 74, 75-76 [21 P. 546]; *Burke* v. *Zanes,* 193 Cal.App.2d 773, 778 [14 Cal.Rptr. 619].) In refusing to apply the common law rules to a known trespasser on an automobile, the common law rules were characterized as ''unrealistic, arbitrary, and inelastic,'' and it was

pointed out that exceedingly fine distinctions had been developed resulting in confusion and that many recent cases have in fact applied the general doctrine of negligence embodied in section 1714 of the Civil Code rather than the rigid common law categories test. (*Fernandez* v. *Consolidated Fisheries, Inc., supra,* 98 Cal.App.2d 91, 96 et seq.) Other cases which have criticized the approach of the common law rules on the basis of the status of the plaintiff with the resulting confusion include *Hansen* v. *Richey, supra,* 237 Cal.App.2d 475, 478; *Miller* v. *Desilu Productions, Inc.,* 204 Cal.App.2d 160, 166 [22 Cal.Rptr. 36]; *Hession* v. *City & County of San Francisco,* 122 Cal.App.2d 592, 602 [265 P.2d 542].

There is another fundamental objection to the approach to the question of the possessor's liability on the basis of the common law distinctions based upon the status of the injured party as a trespasser, licensee, or invitee. Complexity can be borne and confusion remedied where the underlying principles governing liability are based upon proper considerations. Whatever may have been the historical justifications for the common law distinctions, it is clear that those distinctions are not justified in the light of our modern society and that the complexity and confusion which has arisen is not due to difficulty in applying the original common law rules—they are all too easy to apply in their original formulation—but is due to the attempts to apply just rules in our modern society within the ancient terminology.

Without attempting to labor all of the rules relating to the possessor's liability, it is apparent that the classifications of trespasser, licensee, and invitee, the immunities from liability predicated upon those classifications, and the exceptions to those immunities, often do not reflect the major factors which should determine whether immunity should be conferred upon the possessor of land. Some of those factors, including the closeness of the connection between the injury and the defendant's conduct, the moral blame attached to the defendant's conduct, the policy of preventing future harm, and the prevalence and availability of insurance, bear little, if any, relationship to the classifications of trespasser, licensee and invitee and the existing rules conferring immunity.

Although in general there may be a relationship between the remaining factors and the classifications of trespasser, licensee, and invitee, there are many cases in which no such relationship may exist. Thus, although the foreseeability of harm to an invitee would ordinarily seem greater than the

foreseeability of harm to a trespasser, in a particular case the opposite may be true. The same may be said of the issue of certainty of injury. The burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach may often be greater with respect to trespassers than with respect to invitees, but it by no means follows that this is true in every case. In many situations, the burden will be the same, i.e., the conduct necessary upon the defendant's part to meet the burden of exercising due care as to invitees will also meet his burden with respect to licensees and trespassers. The last of the major factors, the cost of insurance, will, of course, vary depending upon the rules of liability adopted, but there is no persuasive evidence that applying ordinary principles of negligence law to the land occupier's liability will materially reduce the prevalence of insurance due to increased cost or even substantially increase the cost.

Considerations such as these have led some courts in particular situations to reject the rigid common law classifications and to approach the issue of the duty of the occupier on the basis of ordinary principles of negligence. (E.g., *Gould* v. *DeBeve* (D.C. Cir.) 330 F.2d 826, 829-830 [117 App.D.C. 360]; *Anderson* v. *Anderson, supra*, 251 Cal.App.2d 409, 413; *Taylor* v. *New Jersey Highway Authority*, 22 N.J. 454 [126 A.2d 313, 317, 62 A.L.R.2d 1211]; *Scheibel* v. *Lipton* 156 Ohio St. 308 [102 N.E.2d 453, 462-463]; *Potts* v. *Amis*, 62 Wn. 2d 777 [384 P.2d 825, 830-831]; see Comment (1957) 22 Mo.L. Rev. 186; Note (1958) 12 Rutgers L.Rev. 599.) And the common law distinctions after thorough study have been repudiated by the jurisdiction of their birth. (Occupiers' Liability Act, 1957, 5 and 6 Eliz. 2, ch. 31.)

A man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose. Reasonable people do not ordinarily vary their conduct depending upon such matters, and to focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and humanitarian values. The common law rules obscure rather than illuminate the proper considerations which should govern determination of the question of duty.

■ It bears repetition that the basic policy of this state

set forth by the Legislature in section 1714 of the Civil Code is that everyone is responsible for an injury caused to another by his want of ordinary care or skill in the management of his property. The factors which may in particular cases warrant departure from this fundamental principle do not warrant the wholesale immunities resulting from the common law classifications, and we are satisfied that continued adherence to the common law distinctions can only lead to injustice or, if we are to avoid injustice, further fictions with the resulting complexity and confusion. We decline to follow and perpetuate such rigid classifications. ■ The proper test to be applied to the liability of the possessor of land in accordance with section 1714 of the Civil Code is whether in the management of his property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative.

Once the ancient concepts as to the liability of the occupier of land are stripped away, the status of the plaintiff relegated to its proper place in determining such liability, and ordinary principles of negligence applied, the result in the instant case presents no substantial difficulties. As we have seen, when we view the matters presented on the motion for summary judgment as we must, we must assume defendant Miss Christian was aware that the faucet handle was defective and dangerous, that the defect was not obvious, and that plaintiff was about to come in contact with the defective condition, and under the undisputed facts she neither remedied the condition nor warned plaintiff of it. ■ Where the occupier of land is aware of a concealed condition involving in the absence of precautions an unreasonable risk of harm to those coming in contact with it and is aware that a person on the premises is about to come in contact with it, the trier of fact can reasonably conclude that a failure to warn or to repair the condition constitutes negligence. Whether or not a guest has a right to expect that his host will remedy dangerous conditions on his account, he should reasonably be entitled to rely upon a warning of the dangerous condition so that he, like the host, will be in a position to take special precautions when he comes in contact with it.

. It may be noted that by carving further exceptions out of the traditional rules relating to the liability to licensees or

social guests, other jurisdictions reach the same result (see Rest.2d Torts, *supra,* § 342; Annot., Duty of a possessor of land to warn adult licensees of danger (1957) 55 A.L.R.2d 525; 49-55 A.L.R.2d, Later Case Service (1967) 485; but cf. *Hansen* v. *Richey, supra,* 237 Cal.App.2d 475, 478-479; *Saba* v. *Jacobs,* 130 Cal.App.2d 717, 719 [279 P.2d 826]; *Ward* v. *Oakley Co.,* 125 Cal.App.2d 840, 844-845 [271 P.2d 536]; *Fisher* v. *General Petroleum Corp.,* 123 Cal.App.2d 770, 779-780 [267 P.2d 841]), that by continuing to adhere to the strained construction of active negligence or possibly, by applying the trap doctrine the result would be reached on the basis of some California precedents (e.g., *Hansen* v. *Richey, supra,* 237 Cal.App.2d 475, 481), and that the result might even be reached by a continued expansion of the definition of the term "invitee" to include all persons invited upon the land who may thereby be led to believe that the host will exercise for their protection the ordinary care of a reasonable man (cf. *O'Keefe* v. *South End Rowing Club,* 64 Cal.2d 729, 737-739 [51 Cal.Rptr. 534, 414 P.2d 830, 16 A.L.R.3d 1]). However, to approach the problem in these manners would only add to the confusion, complexity, and fictions which have resulted from the common law distinctions.

The judgment is reversed.

Traynor, C. J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

BURKE, J.—I dissent. In determining the liability of the occupier or owner of land for injuries, the distinctions between trespassers, licensees and invitees have been developed and applied by the courts over a period of many years. They supply a reasonable and workable approach to the problems involved, and one which provides the degree of stability and predictability so highly prized in the law. The unfortunate alternative, it appears to me, is the route taken by the majority in their opinion in this case; that such issues are to be decided on a case by case basis under the application of the basic law of negligence, bereft of the guiding principles and precedent which the law has heretofore attached by virtue of the relationship of the parties to one another.

Liability for negligence turns upon whether a duty of care is owed, and if so, the extent thereof. Who can doubt that the corner grocery, the large department store, or the financial institution owes a greater duty of care to one whom it has

invited to enter its premises as a prospective customer of its wares or services than it owes to a trespasser seeking to enter after the close of business hours and for a nonbusiness or even an antagonistic purpose? I do not think it unreasonable or unfair that a social guest (classified by the law as a licensee, as was plaintiff here) should be obliged to take the premises in the same condition as his host finds them or permits them to be. Surely a homeowner should not be obliged to hover over his guests with warnings of possible dangers to be found in the condition of the home (e.g., waxed floors, slipping rugs, toys in unexpected places, etc., etc.). Yet today's decision appears to open the door to potentially unlimited liability despite the purpose and circumstances motivating the plaintiff in entering the premises of another, and despite the caveat of the majority that the status of the parties may "have some bearing on the question of liability . . . ," whatever the future may show that language to mean.

In my view, it is not a proper function of this court to overturn the learning, wisdom and experience of the past in this field. Sweeping modifications of tort liability law fall more suitably within the domain of the Legislature, before which all affected interests can be heard and which can enact statutes providing uniform standards and guidelines for the future.

I would affirm the judgment for defendant.

McComb, J., concurred.