467 A.2d 833

Anthony ANTONACE, Administrator of the Estate of Richard Allen Antonace, Deceased

v.

FERRI CONTRACTING COMPANY, INC. and Joseph A. Micale.

Appeal of FERRI CONTRACTING COMPANY, INC.

Superior Court of Pennsylvania.

Argued April 28, 1982.

Filed Oct. 28, 1983.

Petition for Allowance of Appeal Denied Feb. 9, 1984.

David B. Fawcett, Jr., Pittsburgh, for appellant.

William S. Schweers, Jr., Pittsburgh, for Antonace, appellee.

David Harry Patterson, Pittsburgh, for Micale, appellee.

Before CERCONE, President Judge, and BECK and MONTEMURO, JJ.

MONTEMURO, Judge:

This is an action in trespass commenced under the Wrongful Death and Survival Acts, 42 Pa.C.S.A. §§ 8301, 8302. Appellee, Antonace, is seeking damages for the death of his minor son, Richard, age 16, who died September 16, 1979 as a result of injuries he sustained the previous day.

On September 15, 1979, at approximately 5:00 P.M., the decedent was operating a dirt bike on property owned by appellee, Joseph A. Micale, but leased to appellant, Ferri Contracting, Inc. It was the decedent's intention to visit a friend, Gerry Penk, whose residence was located adjacent to the property occupied by appellant. The decedent entered the property at the south or rear end and travelled a short distance before his dirt bike collided with a one and one-half inch steel cable which had been strung across a roadway on the property by appellant. The cable flew up and struck the decedent on the neck. This injury ultimately proved fatal as the decedent died the following day.

On March 24, 1981, this case was tried by a jury before the Honorable Stephen A. Zappala of the Court of Common Pleas, Allegheny County.[1] After the close of appellee Antonace's case, the trial court granted a compulsory non-suit in favor of appellee, Micale. On March 26, 1981, the jury

---

1. The Honorable Stephen A. Zappala is now a Justice of the Supreme Court of Pennsylvania.

returned a verdict, on special interrogatories, in favor of appellee Antonace. Motions for judgment n.o.v. and a new trial were dismissed.

On appeal, appellant, Ferri, seeks a judgment n.o.v., or in the alternative, a new trial.

### Motion for Judgment n.o.v.

Initially, appellant urges the court to hold that the trial court erred in denying its motion for judgment n.o.v.

■ In reviewing a trial court's denial of a motion for judgment n.o.v., we must view the evidence and all reasonable inferences from it in a light most favorable to the verdict winner. *Skoda v. West Penn Power Company*, 411 Pa. 323, 191 A.2d 822 (1963); *Hargrove v. Frommeyer and Company*, 229 Pa.Super. 298, 323 A.2d 300 (1974).

■ Here, the trial judge determined that appellee's decedent was a trespasser, and neither party is disputing his status under the common law. Under current law, the duty owed to a trespasser by a landowner or occupier is to refrain from willful or wanton misconduct. *Engel v. Friend's Hospital*, 439 Pa. 559, 266 A.2d 685 (1970); *Evans v. Philadelphia Transportation Company*, 418 Pa. 567, 212 A.2d 440 (1965).

Definitions of the terms willful and wanton were set forth at length in *Evans, supra:*

... Correctly speaking, wilful misconduct means that the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue. This, of course, would necessarily entail actual prior knowledge of the trespasser's peril. Wanton misconduct, on the other hand, "means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to the

consequences * * *." Prosser, Torts § 33 at 151 (2d ed. 1955).

Regarding "knowledge", the court continued, saying:

Other decisions of this Court have recognized that *actual* prior knowledge of the injured person's peril need not be affirmatively established to constitute wanton misconduct. These cases, as well as the Restatement of Torts, clearly indicate that if the actor realizes *or* at least has knowledge of sufficient facts to cause a reasonable man to realize the existing peril for a sufficient period of time beforehand to give him a reasonable opportunity to take means to avoid the accident, then he is guilty of wanton misconduct if he recklessly disregards the existing danger.

*Evans, supra,* 418 Pa. at 573–574, 212 A.2d at 443–444.

A review of the evidence reveals the following relevant facts.

Appellee, Micale, had leased the property in question to appellant, Ferri, early in 1978. The lease was an oral month to month lease which was to continue until a sewer project contracted by appellant was completed. The purpose for which appellant leased the ten acre property was the storage of material and equipment to be used on the sewer project.

Almost immediately after taking possession of the property, appellant began experiencing problems with vandalism. In an attempt to remedy this problem, appellant installed a house trailer on the property and had one of his employees live there. In addition, appellant strung the steel cable, which ultimately injured the decedent, across one of the three dirt roadways which were located on the property. The cable was left down during normal business hours but was put up on evenings and weekends.

The cable was a dark rust color, was strung horizontally across the road surface, and was approximately 27–30 inches off the ground. The roadway in question was about 250–300 yards in length, with trees and underbush on either

side. The cable was strung midway along the length of the roadway.

There was testimony that prior to the erection of the cable, boys in the vicinity used the property leased by appellant for dirt bike riding. In fact there was testimony that an employee of the appellant, who lived on the property in the house trailer, had invited Gerry Penk and other neighborhood boys to go bike riding on the property with him. Appellant did not dispute that it knew dirt bikers were using the property; however, its superintendent did state that he had never seen trail bikers on the particular roadway in question. Regarding this particular decedent, there was no evidence which indicates that he had ever been on the property prior to the date of the fatal accident.

There was also testimony, disputed by appellant, that the steel cable would not be visible to a dirt bike rider at distances greater than 100 feet. Appellant's superintendent, William F. Duchess, testified that it was foreseeable that someone using the road would not see the cable unless it were somehow marked. Duchess admitted on cross examination that the cable posed a danger and that orange ribbons should have been put on to make it safer. In fact Duchess admitted that he had tied ribbons on the cable at some point but that they had been torn off. Adding to evidence of difficult visibility, appellee Micale testified that when he had been in possession of the property he had placed a gate at the same point that the cable was located, and that he had painted it yellow so that it could be seen.

Local police Officers Simonetti and Chearno testified that on dozens of occasions they had been on the property and had not seen the cable. In addition to patroling the property in his capacity as a police officer, Officer Simonetti had on several occasions been hired by appellant as a private security guard, and was characterized by appellant's superintendent as being "very familiar with the property." (R. 323a). The testimony of Officers Simonetti and Chearno also indicated that during the time appellant was in possession of the property, there were never any "no trespassing

signs" or other warning signs posted. This testimony was corroborated by Gerry Penk, a friend of the decedent, who stated that he too had never seen any warning signs on the property. Appellant's witnesses explained this by saying that they had posted signs but that they had been torn down by vandals.

■ Specifically, in regard to the "knowledge" requirement for a finding of liability, appellant argues that there is no evidence which indicates that the decedent had been on the property prior to the date of the fatal accident, even if other dirt bike riders had been, and that, therefore, it did not have the requisite notice. However, as the definition quoted earlier indicates, actual knowledge is not required for a finding of wantonness. *Evans, supra.* See also, *Fugagli v. Camasi,* 426 Pa. 1, 229 A.2d 735 (1967).

In the case of *Franc v. Pennsylvania Railroad,* 424 Pa. 99, 225 A.2d 528 (1967) (per Musmanno, J., with four Justices concurring and two dissenting), Justice Musmanno reasoned that since railroad employees walked across a bridge that the plaintiff had fallen off of, it was for the jury to determine whether the railroad "if it did not have actual notice, had constructive notice of the hiatus in the walking surface of the span." *Franc, supra,* 424 Pa. at 102, 225 A.2d at 529.

Here similarly it can be said that since appellant's employees were frequently on the property, and in fact one lived there, it was for the jury to determine whether it had constructive notice that the decedent was using the property for dirt bike riding.

Additionally, appellant argues that where one thinks of conscious indifference to the safety of others, one thinks of the spring gun cases where homeowners maimed trespassers, or cases where a property owner strung a very thin, electrically charged wire on his land and camouflaged it so as not to be easily detected by trespassers. While it is perhaps true that these are the classic hornbook examples, appellant sets forth no case law, and we are able to find

none, which limits a finding of willful or wanton misconduct to the examples given.

■ Applying the principles from the foregoing authorities to the case *sub judice*, it is clear that a jury could conclude that appellant knew that dirt bike riders such as the decedent were using the property, and that in view of this knowledge, erection or maintenance of a steel cable, in a position of limited visibility, without markings or warning signs, constituted, "an act of unreasonable character, in disregard of a risk known to him or so obvious that he must have been aware of it, and so great as to make it highly probable that harm would follow." Prosser, *Torts* § 33 at 151 (2nd ed 155), quoted with approval in *Evans, supra,* 418 Pa. at 574, 212 A.2d at 443.

The motion for judgment n.o.v. was therefore properly denied.

### MOTION FOR A NEW TRIAL

Appellant claims several bases of error in support of its motion for a new trial. The first of these alleged errors concerns jury instructions; argument on this issue is broken into two subparts.

Appellant first attacks the trial court's definition of a landowner's or occupier's duty toward a trespasser. The specific portion of the charge excepted to is set forth below:

Now, once a person is designated as a trespasser, what then is the legal responsibility of the owner or occupier of land. Now, although the owner or occupier is not under any affirmative duty to use due care to discover the presence of the/a trespasser, once such presence is ascertained, the owner or occupier is then chargable with reckless and willful conduct if he fails to use reasonable care to avoid the injury to the trespasser. (R. 402a–403a)

As appellant is swift to point out, language very similar to this was disapproved of by our Supreme Court in *Evans, supra.* See language quoted in Justice Musmanno's dissent, *supra* 418 Pa. at 586, 212 A.2d at 449. In response,

appellee notes that the definition the trial court used is very similar to that set forth in *Frederick v. Philadelphia Rapid Transit Company*, 337 Pa. 136, 10 A.2d 576 (1940), also an opinion of our Supreme Court. To the extent that there is any inconsistency, we feel bound to follow the holding in *Evans*, as it is the more recent of the two cases.

■ This, however, does not end the matter. It is well settled that a charge must be looked to in its entirety in questioning its accuracy. *Slavish v. Ratajczak*, 277 Pa.Super. 272, 419 A.2d 767 (1980); *Albert v. Alter*, 252 Pa.Super. 203, 381 A.2d 459 (1977).

After giving the definition set forth above, the trial court continued saying:

Now, it has been stated that reckless and willful misconduct means that there was an intentional act done of an unreasonable character and disregard of a risk known or done so obviously that the actor must be taken to have been aware of what it did or will do and to such an extent as to make the act highly probable that harm would follow.

In other words, or hopefully more simply stated, it is a realization by the Defendant, in this case the owner-occupier of land, or at least what would cause the realization to a reasonable man or the probability or injury to another and by a reckless disregard nevertheless of the consequences still performs the act itself. Now, that is what the law instructs you as to responsibilities of the owners and occupiers of property. (R. 403a–404a)

Such language closely resembles that used by our Supreme Court in *Evans, supra*, in defining willful or wanton misconduct. This language was quoted at length in our discussion of appellant's request for a judgment n.o.v. Arguably, the addition of these two qualifying paragraphs would save the charge from any finding of error that might be indicated under *Evans, supra*. We need not squarely decide this question, however, in view of appellant's second objection to the jury instruction which we feel is dispositive.

Appellant's second objection concerns several related instances where the trial court spoke in terms of ordinary negligence as opposed to willful or wanton misconduct. Although the trial court did define willful or wanton misconduct at the outset of its charge, as the above quoted portions of the charge indicate, it thereafter spoke solely in terms of negligence when discussing liability. After defining negligence, the trial court instructed the jury as follows:

> Now, again for the plaintiff to recover, he must prove, one, that there was negligence, as we have defined to you, and two, that the negligence was a substantial factor in bringing about the harm or damage. (R. 405a)

The trial court then went on to define contributory negligence, and to instruct the jury that they must determine whether the decedent here was contributorily negligent. The jury was instructed that "if you answer that in the affirmative, you will then apply the law of what we call comparative negligence, which the court will give you at a later part of this charge." (R. 407a) As promised, the trial court later defined comparative negligence, substantially as set forth at 42 Pa.C.S.A. § 7102(a).

Just prior to dismissing the jury for deliberation, the trial court described the possible verdicts which it could reach. All six described spoke solely in terms of negligence. (R. 445a–447a) Nowhere was willful or wanton misconduct mentioned.

A verdict form with special interrogatories was used. All questions spoke in terms of negligence. Once again, there was no mention of willful or wanton misconduct.

This is error. Our Supreme Court in *Evans, supra,* specifically stated that, "Manifestly, negligence is not at issue in this case, involving the duty owed to a 'trespasser'". *Evans, supra,* 418 Pa. at 579, 212 A.2d at 446. Pennsylvania courts have held in the past that there is a difference not only in degree, but also in kind, between wanton misconduct and simple negligence—however gross. *Geelen v. Pennsylvania Railroad Company,* 400 Pa. 240,

161 A.2d 595 (1960); *Kasanovich v. George,* 348 Pa. 199, 34 A.2d 523 (1943).

It is abundantly clear that essentially what the trial court did here was to submit this case to the jury as a negligence case. This is improper under the current law and we must therefore order a new trial.

Having so held, we nevertheless feel that the factual circumstances presented in this case beseech us to make a few comments indicating a certain dissatisfaction with the doctrine of landowner's immunity.

Such doctrine recognizes a difference in the duty owed to an individual who enters onto another's property based on the common law status distinctions of invitee, licensee, and trespasser. *Jones v. Three Rivers Management Corp.,* 483 Pa. 75, 394 A.2d 546 (1978); *Davies v. McDowell National Bank,* 407 Pa. 209, 180 A.2d 21 (1962). As our holding and discussion demonstrate, such designation was ultimately determinative of the duty owed by appellant in the case *sub judice.* This is in keeping with the majority of jurisdictions, which have adhered to the notion of landowner's immunity since the doctrine was judicially introduced into this country in the nineteenth century. *Sweeney v. Old Colony and Newport Railroad,* 92 Mass. 368 (1865); 32 ALR 3d, 508–530.

We note at this point a significant, albeit minority, trend toward abolishing the common-law categories, and substituting instead a single standard of reasonable care under the circumstances.

Ironically, among the first jurisdictions to depart from rigid application of the three common-law categories was the jurisdiction of their birth. In 1957, Great Britian's Parliament enacted a statute abolishing the distinctions between licensees and invitees. Occupier's Liability Act, 5 and 6 Eliz. 2, Ch. 31 (1957). Dissatisfaction with the arbitrary nature of the common-law categories had caused one British jurist to make the following remarks in an often quoted passage.

> A canvasser who comes on your premises without your consent is a trespasser. Once he has your consent, he is a licensee. Not until you do business with him is he an invitee. Even when you have done business with him, it seems rather strange that your duty towards him should be different when he come up to your door from what it is when he goes away. Does he change his colour in the middle of the conversation? What is the position when you discuss business with him and it comes to nothing? No confident answer can be given to these questions.

Lord Justice Denning in *Dunster v. Abbott*, 2 All E.R. 1572, 1574 (C.A.1953).

A few years later the United States Supreme Court declined to adopt the common law distinctions for admiralty proceedings, saying:

> The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land * * * which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrial urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassification bred by common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, toward "imposing on owners and occupiers a single duty of reasonable care in all the circumstances".

*Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630–31, 79 S.Ct. 406, 410, 3 L.Ed.2d 550, 554–55 (1959).

Among the States, California was the forerunner, totally abandoning the traditional classifications in the landmark

case of *Rowland v. Christian,* 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968).[2] After stating the policy that, "a man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose", California decided to abandon the common law rule with its exceptions and fictions in favor of a simple and uniform test of reasonable care under the circumstances. *Rowland, supra* at 118, 70 Cal.Rptr. at 104, 443 P.2d at 568.

In recent years, many jurisdictions have followed California's example, among them: New York, *Scurti v. City of New York,* 40 N.Y.2d 433, 387 N.Y.S.2d 55, 354 N.E.2d 794 (1976); Rhode Island, *Mariorenzi v. DiPonte,* 114 R.I. 294, 333 A.2d 127 (1975); the District of Columbia, *Smith v. Arbaugh's Restaurant, Inc.,* 152 U.S.App.D.C. 86, 469 F.2d 97 (1972); Colorado, *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971); and Hawaii, *Pickard v. City and County of Honolulu,* 51 Hawaii 134, 452 P.2d 445 (1969).[3]

Under such a test as that which was adopted in *Rowland,* foreseeability of course become the salient inquiry. As a general proposition, evidence of an entrant's status under the common-law categories may have some relationship to

**2.** As the California Supreme Court in *Rowland* notes, the rigid distinctions had previously been rejected by some court in limited situations. (E.g., *Gould v. DeBeve* (D.C.Cir.) 330 F.2d 826, 829–830 [117 U.S. App.D.C. 360]; *Anderson v. Anderson,* supra, 251 Cal.App.2d 409, 413 [59 Cal.Rptr. 342]; *Taylor v. New Jersey Highway Authority,* 22 N.J. 454 [126 A.2d 313, 317, 62 A.L.R.2d 1211]; *Scheibel v. Lipton,* 156 Ohio St. 308 [102 N.E.2d 453, 462–463]; *Potts v. Amis,* 62 Wash.2d 777 [384 P.2d 825, 830–831]; see Comment (1957) 22 Mo.L.Rev. 186; Note (1958) 12 Rugers L.Rev. 599).
*Rowland, supra,* 69 Cal.2d at 118, 70 Cal.Rptr. at 104, 443 P.2d at 568.

**3.** No doubt with Rowland and its progeny as a stimulus, several states have reassessed the viability of the common-law categories and have abolished the distinction between invitee and licensee but have retained the separate class of trespasser. This has been the approach taken by several jurisdictions, including: Maine, *Poulin v. Colby College,* 402 A.2d 846 (Me., 1979); Minnesota, *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639 (1972); and North Dakota, *O'Leary v. Coenen,* 251 N.W.2d 746 (N.D., 1977)

the question of whether his presence was reasonably anticipated. We note however, as the court in *Rowland* did, that while it would seem that foreseeability of harm to one entering the land for a business purpose—a traditional invitee—would be greater than to a trespasser, in a particular case the opposite may be true.

We feel that what we have here is such a case. For example, a truck driver making deliveries to appellant's property would likely enter the property during regular business hours when the cable was detached. Even if it had been mistakenly left up, the driver would be protected from bodily injury by his truck. On the other hand a local dirt bike ride, of which appellant knew there were many, who for example entered the property on a weekend, would be met by the presence of a steel cable and would not have the benefit of a large vehicle with which to protect himself from injury.

We sympathize with the frustration of the court in *Gould v. DeBeve*, 117 U.S.App.D.C. 360, 330 F.2d 826 (1964), involving a case where a two and one-half year old boy, deemed under a lease term to be a trespasser, was injured in a fall at his mother's friend's apartment. There the court questioned the justification for affording the same degree of care to the plaintiff therein as was afforded, "the poacher upon the manorial estate of 18th Century England ..." *Gould, supra* 330 F.2d at 829.

Our holding today reflects a recognition of the fact that we, as an intermediate appellate court are "not free ... to overrule the decisional law enunciated by the Supreme Court of Pennsylvania." *Hillbrook Apartments, Inc. v. Nyce Crete Co.*, 237 Pa.Super. 565, 573, 352 A.2d 148, 152 (1975). Nevertheless, we may suggest that this is an appropriate juncture at which to reevaluate the viability of the doctrine of landowner's immunity in the Commonwealth.[4]

---

4. This is particularly so in light of Pennsylvania's adoption of comparative negligence, 42 Pa.C.S.A. § 7102. For a general discussion of the potential impact of comparative negligence on the doctrine of willful and wanton misconduct, see Timby and Plevyak, *The Effect of Penn-*

As we have determined that a new trial is required, we need not address appellant's other alleged bases of error beyond stating that we find its arguments in regard to these generally lacking in merit.

Judgment reversed and a new trial ordered.

BECK, J., concurred in the result.

*sylvania's Comparative Negligence Statute on Traditional Tort Concepts and Doctrines,* 24 Villanova L.Rev. 453 (1979).