WERDEGAR, J.,
Concurring. — I agree with the majority’s conclusion that “under California law, Target’s common law duty of reasonable care to its patrons does not include an obligation to acquire and make available an AED [(automated external defibrillator)] for the use of its patrons in a medical emergency.” (Maj. opn., ante, at pp. 343-344.) Unlike the majority, however, I reach that conclusion without analogizing this case to those involving protection from third party criminal activity. (Id., at pp. 337-339.) Nor do I embrace the majority’s broad rule, drawn from that analogy, that property owners need not adopt any nonminimal precautionary medical safety measure “in the absence of a showing of a heightened or high degree of foreseeability of the medical risk in question.” (Id., at p. 339.) I would instead directly evaluate the specific obligation proposed here, that of installing and maintaining an AED in a large retail business, under the duty factors we outlined in Rowland v. Christian (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561] (Rowland), and would hold only that the duty of reasonable care does not extend to that particular obligation.
As the majority explains (maj. opn., ante, at p. 335), because of the special relationship between a business and its patrons, a business’s common law duty of due care includes the obligation to take reasonable measures to help patrons who suffer an injury or the effects of illness while on the premises. Courts may recognize exceptions to the duty of reasonable care where clearly supported by public policy (Cabral v. Ralphs Grocery Co. (2011) 51 Cal.4th 764, 771 [122 Cal.Rptr.3d 313, 248 P.3d 1170] (Cabral)-, Rowland, supra, 69 Cal.2d at p. 112) and we have identified several factors that, taken together, may justify such a departure from the general duty rule: “the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant’s conduct and the injury suffered, the moral blame attached to the defendant’s conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.” (Rowland, at p. 113; see, e.g., Cabral, at pp. 774-784 [rejecting claimed exception to duty of care for stopping alongside a freeway]; Parsons v. Crown Disposal Co. (1997) 15 Cal.4th 456, 472-478 [63 Cal.Rptr.2d 291, 936 P.2d 70] [recognizing exception to duty of care for normal operation of garbage truck near bridle path]; *345 Rowland, at pp. 117-119 [rejecting categorical exception to duty of care for licensees and trespassers on real property].)
That some of the millions of Californians who visit large retail stores each year will suffer cardiac arrests while shopping is, of course, foreseeable, though as the majority observes (maj. opn., ante, at p. 340), the probability appears to be no greater in a store than in any place open to the public. Nor does it appear that cardiac arrest in a large retail store is particularly likely to lead to death. Plaintiffs assert the size and configuration of such a store makes timely provision of emergency medical services impossible, but they fail to demonstrate the truth of that proposition, nor is it one we can take notice of or assume. Moreover, while the death of a cardiac arrest victim like plaintiffs’ decedent leaves no doubt as to fact of injury, the connection between that injury and defendant’s choice not to install and maintain an AED is uncertain. The parties provide different estimates as to how often presence of an AED saves a cardiac arrest victim, defendant asserting around 20 to 30 percent of the time, and plaintiffs around 50 to 70 percent, but that an AED does not provide sure and certain protection from death is in any event clear.
Turning to Rowland's public policy factors, I note that no moral blame can be attached to the omission at issue here. “The overall policy of preventing future harm is ordinarily served, in tort law, by imposing the costs of negligent conduct upon those responsible.” (Cabral, supra, 51 Cal.4th at p. 781.) Here, however, there is a substantial question whether recognizing a common law duty of care would best serve that preventive goal in an area already significantly regulated by statute. The Legislature’s approach of encouraging voluntary installation of AEDs by providing qualified immunity for ordinary negligence to those acquiring them for emergency use (Civ. Code, § 1714.21, subd. (d)), while seeking to fund their installation in state buildings (Gov. Code, § 8455), and requiring installation of AEDs only in fitness facilities (Health & Saf. Code, § 104113, subd. (a)), may well provide an equivalent level of prevention without the uncertain burdens of a broad tort duty. As the majority observes, those burdens are likely to be more than minimal and, because the limiting factors proposed by plaintiffs are not readily amenable to judicial definition, they are also likely, in practice, to be widely spread. (Maj. opn., ante, at pp. 340-341.) The final Rowland factor, the availability and cost of insurance for the risk, might appear to favor recognition of a duty, but the serious, sometimes fatal consequences of cardiac arrest and the difficulty of effectively limiting a common law duty to prepare for it create the possibility that insurance costs would be relatively high for smaller businesses.
Balancing these foreseeability and policy factors together, I join the majority’s conclusion that the decision whether and how to expand the legal *346 obligation to install and maintain AEDs is best left to the Legislature. (Maj. opn., ante, at p. 342.) As stated earlier, however, I do not join the majority in all of its reasoning.
The majority’s comparison to prevention of criminal acts by third parties is not compelling and, in my view, is somewhat troubling. The negligence claims made in these two factual contexts both rest on omissions — failure to take preventive anticrime measures and failure to prepare for cardiac arrests by installing an AED — rather than on any affirmative action by the property owner, but they seem otherwise to have little in common. In the criminal assault cases the defendant is asked to take measures to control the intentional criminal acts of others, a type of duty that has been regarded as particularly problematic. (See Ann M. v. Pacific Plaza Shopping Center (1993) 6 Cal.4th 666, 676 [25 Cal.Rptr.2d 137, 863 P.2d 207] [resting analysis on premise that “a duty to take affirmative action to control the wrongful acts of a third party will be imposed only where such conduct can be reasonably anticipated”].) Imposing liability on a business for the consequences of a third person’s intentional assault involves a morally questionable shifting of responsibility that is simply not implicated by the claim a business should have installed an AED on its premises.
As the majority observes (maj. opn., ante, at p. 337), both prevention of criminal assaults and aid in a medical emergency come within the general category of a duty to aid or protect discussed in section 314A of the Restatement Second of Torts. But that is only to say both types of negligence claims rest on the defendant’s nonfeasance in the face of a special relationship. By assuming merely from their proximity in the Restatement that the nonminimal burden/heightened foreseeability rule we have developed for prevention of criminal acts also applies to preparation for medical emergencies, the majority may leave the unfortunate impression that the rule for prevention of assaults applies to all claims of negligent omission to act within a special relationship. Such a broad conclusion is unlikely to be justified under a properly nuanced Rowland duty analysis.
Nor do I agree with the majority that the same rule necessarily applies to all nonminimal “precautionary medical safety measures.” (Maj. opn., ante, at p. 339.) To be sure, the Rowland factors are correctly applied to a category of allegedly negligent conduct rather than to the conduct of the particular defendant in the case at bar (Cabral, supra, 51 Cal.4th at pp. 772-774), but the category should be framed in a manner that allows for meaningful analysis of the factors. The issue in this case is whether large retailers have a duty to install and maintain AEDs, not whether businesses in general have a duty to take precautionary safety measures in general. The latter would be too broad for meaningful analysis.
*347 For these reasons, I concur in the majority’s result but not in the entirety of its analysis.