Filed 10/2/13  Swanson v. Simpson Timber CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ALBERTA SWANSON, Individually and as Successor, etc., | B244266 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC438035) |
| v. | |
| SIMPSON TIMBER COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Amy Hogue, Judge.  Affirmed.

The Arkin Law Firm, Sharon J. Arkin; Farrise Firm and Simona A. Farrise for Plaintiffs and Appellants.

Foley & Mansfield, Stephen J. Foley and Keith M. Ameele for Defendant and Respondent.

In *Campbell v. Ford Motor Co.* (2012) 206 Cal.App.4th 15 (*Campbell*), the court applied the *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*) factors, as further clarified in *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764 (*Cabral*), to hold a "property owner has no duty to protect family members of workers on its premises from secondary exposure to asbestos used during the course of the property owner's business."[1] (*Campbell*, *supra*, at p. 34.) In this secondary asbestos case, we must determine whether to follow *Campbell* in an action against a premises owner brought by its employee who initially was exposed to asbestos used in manufacturing the premises owner's products, but also allegedly was secondarily exposed off the premises to respirable asbestos on his work clothes or on his son's work clothes, who also was an employee.

Although the factual circumstances differ here, like *Campbell*, we conclude that based upon the *Rowland* public policy factors, a premises owner has no duty to protect an employee from secondary exposure to asbestos off the premises arising from his association with a family member and fellow employee who wore asbestos-contaminated work clothes home. To hold otherwise would impose limitless liability on premises owners. We further conclude an employee's secondary asbestos exposure when wearing home his own work clothes is a collateral or derivative injury barred by the exclusivity provisions of the Workers Compensation Act. Accordingly, we affirm the trial court's judgment of nonsuit.

## FACTUAL AND PROCEDURAL BACKGROUND

Generally, in secondary asbestos exposure cases against a premises owner, the theory of liability is that a worker brought home asbestos dust and fibers on his work clothes or person and a family member who never set foot on the premises suffered an asbestos-related illness. (*Campbell*, *supra*, 206 Cal.App.4th at p. 30.) In this case, the plaintiff was an employee who was exposed to asbestos while working on the premises

---

[1] This exposure also is referred to as "bystander," "take home," or "transmission asbestos exposure."

and is alleging secondary asbestos exposure off the premises when he and his son brought home respirable asbestos on their work clothes.

1. *Facts*

John Swanson died of lung cancer allegedly caused by asbestos exposure. He worked at the Simpson Timber Company (the company) from 1947 to 1975. The company used asbestos as a component in the manufacturing of its compressed insulating boards and ceiling tiles.[2] The boards and ceiling tiles were manufactured in the insulation board plant. Swanson worked at the plant as a fork lift operator and later became lead man.

Joseph Swanson,[3] the decedent's son, worked at the plant for three months in 1967 and again for a few months in 1969. Joseph worked on the production line.

The company did not provide its employees with work clothes, masks, and respirators, or a changing room and showers. Both Swanson and Joseph allegedly had asbestos dust and fibers on their work clothes, and the dust and fibers were deposited on the floor, couches, and chairs in their family home and in the car they drove to and from work.

2. *Swanson's Primary Exposure Claim Barred by Workers' Compensation*

Swanson's surviving spouse, acting as his successor in interest, and his heirs (appellants) filed a complaint alleging negligence, strict liability, breach of warranties, premises liability, fraud, conspiracy, loss of consortium, and wrongful death against numerous defendants. The negligence cause of action against the premises defendants,

---

[2] To support this fact, appellants cite to 23 record citations. We have reviewed all of these citations and only two actually support this fact. It is counsel's duty to refer the reviewing court to the part of the record that supports her clients' contentions on appeal. (Cal. Rules of Court, rule 8.204(a)(1)(C).) The purpose of requiring record citations is not merely formulaic. Rather, it is to allow the court to find facts in the record when evaluating arguments in the brief. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 & fn. 16.)

[3] Because father and son share the same surname, for clarity we refer to Swanson's son as "Joseph." We mean no disrespect.

which included the company, alleged the premises owners caused asbestos and asbestos-containing products to be used on the premises either by its own workers or independent contractors. The complaint further alleges it was foreseeable that in performing these acts, dangerous and toxic asbestos dust and fibers would be released into the air creating an unreasonable risk of harm.

The trial court concluded that the claims against the company arising from Swanson's asbestos exposure while working on the premises were barred by the Workers' Compensation Act. Although not alleged, the theory of liability then shifted to secondary asbestos exposure.

3. *Nonsuit on Premises Liability Claim for Secondary Asbestos Exposure*

Citing *Cottle v. Superior Court* (1992) 3 Cal.App.4th 1367, the trial court employed a procedure to address the viability of the secondary asbestos exposure theory. Labeled an "offer of proof," the court also asked the parties to brief *Campbell* to determine whether the company owed a duty to Swanson for injuries caused by secondary asbestos exposure.

The trial court concluded the offer of proof would not sustain the remaining cause of action for premises liability following *Campbell* and set a briefing schedule for a motion for nonsuit. The trial court granted the motion for nonsuit, concluding the premises liability claim arising from secondary asbestos exposure failed as a matter of law under *Campbell* and was preempted by the Workers' Compensation Act.

Judgment of nonsuit was entered and this timely appealed followed.[4]

---

[4] Appellants note their objection to the procedures employed by the trial court. Because they do not present argument on this point, any perceived procedural error has been forfeited. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1245, fn. 14.) In addition, when setting forth the standard of review, appellants state they specifically reserved their right to reopen their case in order to remedy any evidentiary defects. The cited reference to support the request to reopen their case does not describe the evidence or provide an explanation as to how the evidence would cure the deficiencies. (*Alpert v. Villa Romano Homeowners Assn.* (2000) 81 Cal.App.4th 1320, 1337-1338.) Thus, the record does not indicate that the offer of proof would have changed the legal theories upon which the trial court granted the judgment of nonsuit.

4

DISCUSSION

1. *Standards of Review and Governing Premises Liability Principles*

Although this appeal is from a judgment of nonsuit, we are presented with legal questions, which are reviewed de novo on appeal.[5]  (*Cabral*, *supra*, 51 Cal.4th at p. 770; see *Gunnell v. Metrocolor Laboratories, Inc.* (2001) 92 Cal.App.4th 710, 718-719.)

"The general rule in California is that '[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . .' "  (*Cabral*, *supra*, 51 Cal.4th at p. 771; Civ. Code, § 1714, subd. (a).)  A landowner owes a duty to exercise reasonable care to maintain the property in such a manner as to avoid exposing others to an unreasonable risk of injury. (*Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1156.)  A landowner's duty of care to avoid exposing others to a risk of injury is not limited to injuries that occur on premises owned or controlled by the landowner; "the duty of care encompasses a duty to avoid exposing persons to risks of injury that occur off site if the landowner's property is maintained in such a manner as to expose persons to an unreasonable risk of injury offsite.  [Citations.]" (*Barnes v. Black* (1999) 71 Cal.App.4th 1473, 1478-1479.)

As the Supreme Court stated in *Cabral*, *supra*, 51 Cal.4th 764, the *Rowland* court identified several factors that, when balanced together, may justify a departure from the fundamental principle embodied in Civil Code section 1714.  (*Cabral,* at p. 771.)  The *Rowland* factors are: "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting

---

[5]     In reviewing a judgment of nonsuit, we view the evidence in the light most favorable to appellants and affirm only if appellants could not have prevailed at trial even if the jury had accepted all appellants' evidence as true and resolved all factual conflicts in appellants' favor.  (*Michel v. Moore & Associates, Inc.* (2007) 156 Cal.App.4th 756, 761.)

liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland*, *supra*, 69 Cal.2d at p. 113; see also *Cabral*, *supra*, at p. 771.) Courts should create an exception to the general rule of Civil Code section 1714 only where " 'clearly supported by public policy.' " (*Cabral*, *supra*, at p. 771; *Rowland*, *supra*, at p. 112.)

The *Rowland* factors determine the scope of a duty owed whether the risk of harm occurs on the landowner's premises or off the premises. (*Barnes v. Black*, *supra*, 71 Cal.App.4th at p. 1479.) While *Rowland* rejected rigid classifications to determine a premises owner's duty, the proper test to be applied is whether in the management of the property, the premises owner has acted reasonably in view of the probability of injury to others. (*Rowland*, *supra*, 69 Cal.2d at p. 119.)

2. Campbell *Held a Premises Owner has No Duty to Protect Family Members of Workers on its Premises from Secondary Asbestos Exposure*

*Campbell* addressed the issue of "whether a premises owner has a duty to protect family members of workers on its premises from secondary exposure to asbestos used during the course of the property owner's business." (*Campbell*, *supra*, 206 Cal.App.4th at p. 29.) Employing the *Rowland* factors, the *Campbell* court concluded that the premises owner did not owe a duty.

In *Campbell*, Eileen Honer's father and brother worked as asbestos insulators in the late 1940's during the construction of one of Ford's assembly plants. (*Campbell*, *supra*, 206 Cal.App.4th at p. 20.) More than 55 years later, Honer was diagnosed with mesothelioma and filed a complaint stating a premises liability cause of action, alleging her father and brother were exposed to asbestos-containing products that caused their clothing to be contaminated with asbestos fibers. (*Ibid.*) Honer allegedly was exposed to the asbestos fibers because of her direct and indirect contact with her brother and father, as well as her contact with their clothing. She washed her father's and brother's clothes and would first shake out the clothes because they were " 'dirty' " and " 'dusty,' " and " 'nasty.' " (*Ibid.*)

6

Before the case was presented to the jury, Ford requested a jury instruction based upon *Privette v. Superior Court* (1993) 5 Cal.4th 689, stating that a premises owner is not liable to the plaintiff for injuries caused by the actions of independent contractors on Ford's premises unless Ford affirmatively contributed to plaintiff's alleged injury. (*Campbell*, *supra*, 206 Cal.App.4th at p. 23.)  The trial court refused the instruction. (*Ibid.*)  By special verdict, the jury concluded that Ford's negligence was a substantial factor in causing Honer's injury, and Ford was responsible for 5 percent of her damages. (*Ibid.*)  Ford appealed, relying on the legal principles in its rejected jury instruction to argue it owed no duty to Honer.  (*Id.* at pp. 28-29.)

As noted, the *Campbell* court reframed the issue Ford presented and analyzed the *Rowland* factors to conclude no duty was owed.  Addressing the first three *Rowland* factors, that is, foreseeability of harm to the plaintiff, degree of certainty that the plaintiff suffered injury, and closeness of the connection between the defendant's conduct and the injury suffered, the *Campbell* court reiterated that foreseeability alone was not enough to impose a duty.  (*Campbell*, *supra*, 206 Cal.App.4th at pp. 29-32.)  Ford acknowledged the second factor that Honer suffered asbestos-caused harm.  But, even if it were foreseeable to Ford that workers on its premises could be exposed to asbestos dust and fibers, the third factor addressing the " 'closeness of the connection' " between Ford's conduct (hiring workers) and the injury to a family member was "attenuated."  (*Id.* at p. 31.)  In a footnote, the court stated:  "Although our analysis does not turn on this distinction, we note that in this case, the relationship between Ford's conduct and the injury Honer suffered is even more attenuated inasmuch as Ford hired a general contractor to perform the work, that general contractor hired a subcontractor, that subcontractor hired another subcontractor, and that subcontractor employed Honer's father and brother."  (*Ibid.*, fn. 6.)

Because the existence of a duty is a combination of foreseeability of the risk and a weighing of public policy considerations, the *Campbell* court addressed the remaining factors outlined in *Rowland*, concluding "strong public policy considerations counsel against imposing a duty of care on property owners for such secondary exposure."

7

(*Campbell*, *supra*, 206 Cal.App.4th at p. 32.)  Ford's negligence did not rise to the level of moral culpability.  (*Ibid*.)  As for the next two *Rowland* factors, that is, the extent of the burden to the defendant, and the consequences to the community if the court imposes on a particular defendant a duty of care toward the plaintiff, these factors weighed heavily against Honer.  (*Ibid*.)  The court noted the difficulty with these factors is drawing the line between persons to whom a duty is owed and those persons to whom no duty is owed.

Relying on the analysis in *Oddone v. Superior Court* (2009) 179 Cal.App.4th 813, 822, describing the difficulty in arbitrarily determining the scope of the duty to those secondarily exposed to toxic chemicals, the *Campbell* court stated, "in a case such as Honer's, where the claim is that the laundering of the worker's clothing is the primary source of asbestos exposure, the class of secondarily exposed potential plaintiffs is far greater, including fellow commuters, those performing laundry services and more." (*Campbell*, *supra*, 206 Cal.App.4th at pp. 32-33.)  Imposing such a duty would be uncertain and potentially large in scope.  *Campbell* also cited with approval cases from other jurisdictions that have rejected the imposition of a duty on premises owners for secondary asbestos exposure, recognizing that tort law must draw a line between the competing policy considerations of providing a remedy to everyone who is injured and extending limitless liability.  (*Id*. at p. 34.)  Accordingly, the *Campbell* court declined to impose a duty.

3.  Campbell *and Whether the Company Owes a Duty*

Appellants contend *Campbell* does not apply, principally arguing that *Campbell* was limited to a premises owner's duty to an independent contractor and a different analysis of the *Rowland* factors applies when considering a premises owner's duty to an employee who is secondarily exposed to asbestos used to manufacture the company's product.  Appellants also contend *Campbell* overlooked the body of case law imposing a duty on the premises owner for secondary asbestos exposure based upon the foreseeability of the risk of injury to a family member.  We discuss each contention, concluding the *Rowland* public policy factors are even more compelling here than in

8

*Campbell*. In reaching this conclusion, we solely focus on the theory that an employee (Joseph) brought home asbestos dust and fibers on his work clothes and secondarily exposed another employee and family member (Swanson). We discuss the alternative secondary self-exposure theory that Swanson brought home asbestos dust and fibers on his work clothes, *post* at pages 14-16.

   a.   Campbell *Did Not Turn on the Worker's Employment Status*

Appellants contend that *Campbell* is not applicable because its holding is limited to a premises owner's duty to the family member of an independent contractor. The issue addressed in *Campbell* is the duty of a premises owner to family members injured off premises from secondary asbestos exposure. The *Campbell* court unequivocally rejected, and did not address, Ford's argument that because it owed no duty to Honer's father and brother as independent contractors, it owed no duty to Honer. (*Campbell*, *supra*, 206 Cal.App.4th at p. 29.) Therefore, the *Campbell* court did not conclude, as appellants suggest, that Ford's lack of control militated against imposing a duty. *Campbell*'s only reference to the independent contractor status of Honer's father and brother was in a footnote, stating "our analysis does not turn on this distinction." (*Campbell*, at p. 31, fn. 6.)

Appellants also improperly read more into the *Campbell* court's modification order to support their argument. Initially, *Campbell* framed the issue as the duty of an employer " 'to protect family members of *employees* from secondary exposure to asbestos used during the course of the *employer's business*.' " (Italics added.) The modification of "employees" to "workers" and "employer's business" to "property owner's business," is consistent with the facts of that case. (*Campbell*, *supra*, 206 Cal.App.4th at p. 31, fn 6.) Had the *Campbell* court intended to determine the duty a premises owner owed to family members of an independent contractor, it would have decided the issue Ford presented to the court for review.

Appellants' reliance on *Olivo v. Owens-Illinois, Inc.* (N.J. 2006) 895 A.2d 1143 undercuts their argument that employment status is determinative when evaluating the duty of a premises owner to family members who have been secondarily exposed to

9

asbestos.  In *Olivo*, the New Jersey Supreme Court decided the issue presented in *Campbell*, concluding a premises owner has a duty to the wife of an independent contractor who laundered her husband's work clothes based on the foreseeable risk of exposure from asbestos brought home on contaminated clothing.[6]  (*Id.* at pp. 1146, 1149; see contra, *Van Fossen v. MidAmerican Energy Co.* (Iowa 2009) 777 N.W.2d 689, 699 [premises owner owed no duty to the household member of an independent contractor exposed to asbestos fibers and dust taken home on the independent contractor's clothes].)  Unlike *Campbell*, *Olivo* also addressed the premises owner's argument that it did not owe a duty to the plaintiff who was an employee of an independent contractor.[7]  (*Olivo v. Owens-Illinois, Inc., supra,* at pp. 1150-1151.)

   b.  Rowland *Compels the Conclusion No Duty is Owed*

   Aside from pointing out the employment status distinction, which was not determinative in *Campbell*, appellants contend the analysis of the *Rowland* factors differs here because the company's moral culpability, a public policy factor, is greater as it manufactured asbestos-containing products.  Appellants maintain that, unlike Ford, the company had absolute control over the release of asbestos fibers in its manufacturing plant.  Appellants overlook the facts in *Campbell* in which "Ford knew asbestos was being installed on its premises," and "[a] Ford employee regularly checked on the progress of the insulation work."  (*Campbell*, *supra*, 206 Cal.App.4th at pp. 20-21.)  But, even if this factor does not militate in the company's favor, as it did in *Campbell*, the

---

[6]   Appellants also rely on *Chaisson v. Avondale Industries, Inc.* (La.App. 4 Cir. 01/31/07) 947 So.2d 171, which is factually distinguishable.  In *Chaisson*, the independent contractor hired by Union Carbide, the premises owner, contended it did not owe a duty to its employee because Union Carbide was responsible for guarding against asbestos exposure.  (*Id.* at p. 181.)  The court relied on *Olivo* and concluded the independent contractor owed a duty to its employee's family members in spite of Union Carbide's own breach of duty.  (*Id.* at pp. 183-184.)

[7]   On this second theory, the New Jersey Supreme Court remanded the case for further proceedings because a factual issue existed as to the extent of the duty Exxon Mobil owed to the plaintiff.  (*Olivo v. Owens-Illinois, Inc., supra,* 895 A.2d at p. 1151.)

remaining *Rowland* public policy factors weigh more heavily in the company's favor than these factors did in *Campbell*.

When assessing the burden to the premises owner and the consequences to the community if a duty of care is imposed on the particular defendant toward the plaintiff, we agree with the *Campbell* court that it is hard to draw the line between the class of persons to whom a duty is owed and those persons to whom a duty is not owed. Would the duty owed apply to all family members, some of whom may not be in contact with the exposed person, or to all household members, some of whom may not be family members? In *Campbell*, laundering the worker's clothing was the primary source of asbestos exposure, and the class of secondarily exposed plaintiffs was far greater than just family members, "including fellow commuters, those performing laundry services and more." (*Campbell*, *supra*, 206 Cal.App.4th at pp. 32-33.)

Here, the class of secondarily exposed plaintiffs is even greater than in *Campbell* because Swanson allegedly was exposed by coming into contact with asbestos fibers on Joseph's work clothes away from the premises in the car driving to and from work and at home. Under these circumstances, the class of secondarily exposed plaintiffs includes household members, guests, and any person who has come into contact with the employee and his or her asbestos-contaminated clothes. Joseph potentially could cut a wide swath by taking a bus home from work, dropping into the pharmacy or grocery store after work, or attending a school meeting or city hall meeting before going home for the day. Imposing a duty under these circumstances to persons who may have come into contact with an employee wearing asbestos-contaminated work clothes saddles the premises owner with a burden of uncertain and limitless liability. Thus, in a case such as this one, in which an employee alleges secondary asbestos exposure by coming into contact with asbestos fibers on the work clothes of another employee away from the premises, we hold the premises owner owes no duty. We are not confronted with a case similar to *Campbell* in which a family member, who has never set foot on the premises, is repeatedly and regularly exposed while laundering asbestos-contaminated work clothes,

11

and therefore make no determination on whether a duty is owed under any other circumstances.

    c.  *Out-of-State Cases Are Not Persuasive*

Appellants contend *Campbell* is out of step with the majority of other state courts addressing this issue and employing similar *Rowland* factors with an emphasis on foreseeability. None of these cited cases was brought by an employee who was initially exposed to asbestos during the course of the premises owner's business and alleged secondary asbestos exposure by coming into contact with asbestos fibers on the work clothes of another employee away from the premises. Like *Campbell*, the majority of the cited cases address a duty owed to a family member who has never set foot on the premises and is regularly and repeatedly exposed while laundering asbestos-contaminated clothes.[8]

Even courts focusing on foreseeability and concluding a duty is owed limit the scope of the duty. In *Olivo v. Owens-Illinois, Inc.*, *supra*, 895 A.2d 1143, the court stated, "[t]he duty we recognize in these circumstances is focused on the particularized foreseeability of harm to plaintiff's wife, who ordinarily would perform typical household chores that would include laundering the work clothes worn by her husband." (*Id*. at p. 1150.) In *Satterfield v. Breeding Insulation Co.* (Tenn. 2008) 266 S.W.3d 347, the Tennessee Supreme Court held, "the duty we recognize today extends to those who regularly and repeatedly come into close contact with an employee's contaminated work

---

[8]     Appellants cite one exception. In *Zimko v. American Cyanamid* (La.App. 4 Cir. 06/08/05) 905 So.2d 465, the Louisiana Court of Appeal held the premises owner owed a duty to the employee's son who was allegedly exposed to asbestos from his father's work clothes. (*Id.* at p. 483.) The holding was reaffirmed in *Chaisson v. Avondale Industries, Inc.*, *supra*, 947 So.2d at pp. 181-183. *Zimko* analyzed foreseeability, but in Louisiana a " 'no duty' defense in a negligence case is seldom appropriate." (*Zimko v. American Cyanamid*, *supra*, at p. 482.) The appellate court noted "resolution of a negligence case based on a finding that a defendant has 'no duty' should be reserved for the exceptional situation," in which there is a categorical rule, such as the " 'failure to act, injuries to unborn victims, negligently inflicted mental anguish or purely economic harm unaccompanied by physical trauma to the claimant or his property.' " (*Id.* at pp. 482-483 & fn. 19, italics omitted.)

12

clothes over an extended period of time, regardless of whether they live in the employee's home or are a family member."[9] (*Id.* at p. 374.)

Although appellants criticize the *Campbell* court's citation to and reliance on *Oddone v. Superior Court*, *supra*, 179 Cal.App.4th 813, the cited cases limiting the scope of the duty illustrate and recognize the difficulty in drawing the line between those persons to whom a duty is owed and those persons to whom no duty is owed. *Olivo* appears to limit the duty owed based on the foreseeability of a spouse laundering her husband's work clothes, which leaves unresolved the *Campbell* court's concern as to whether the duty owed includes all persons who regularly and repeatedly launder the husband's work clothes. *Satterfield* limited the duty owed to those who "regularly and routinely" come into contact with the asbestos-contaminated work clothes "over an extended period of time," which, as the *Oddone* court notes is not a bright line rule. (See *Oddone v. Superior Court*, *supra*, 179 Cal.App.4th at p. 822.) Would a premises owner owe a duty to fellow commuters in a van pool or a train who "regularly and routinely" come into contact with asbestos-contaminated work clothes? Drawing the line proves even more difficult where the exposure is based on mere association with, or contact with, the employee's asbestos-contaminated clothes because even if the class of secondarily exposed plaintiffs is limited to the household, every person entering the house is a potential plaintiff. As in *Campbell*, we believe the line has been properly drawn between the competing public policy considerations of providing a remedy to everyone who is injured and extending tort liability almost without limit. Under the circumstances presented here, we conclude the company owed no duty to Swanson to

---

[9] Appellants' two other cited cases concluded the complaint was insufficient to establish a duty was owed to the spouse based on her exposure to take home asbestos on her husband's clothes (*Simpkins v. CSX Transportation, Inc.* (Ill. 2012) 965 N.E.2d 1092, 1099-1100), and as a factual matter a family member who launders clothes could be a foreseeable victim of asbestos exposure depending on the particular circumstances of the case. (*Rochon v. Saberhagen Holdings* (Wash.Ct.App., Aug. 13, 2007, No. 58579-7-I) 2007 Wash.App. Lexis 2392.)

protect him from secondary asbestos exposure arising from his association with a family member and fellow employee who wore asbestos-contaminated work clothes home.

4. *Workers' Compensation Exclusivity Bars Secondary Self-Exposure Injury*

As an alternative theory of secondary asbestos exposure, appellants contend that Swanson was injured off premises (and outside the employment relationship) when he wore his asbestos-contaminated work clothes home. This secondary self-exposure theory was not raised or addressed in *Campbell* or any of appellants' cited cases imposing a duty on a premises owner for secondary asbestos exposure. In resolving this issue, we must decide if Swanson's secondary self-exposure is outside the reach of workers' compensation exclusivity rule. As the Supreme Court stated in *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, while the theoretical compensation bargain in the workers' compensation laws seems to be straightforward, the "unabated flow of published decisions *clarifying* the scope of workers' compensation exclusivity suggests considerable confusion as well as innovative lawyering." (*Id*. at p. 811.)

As a general rule, an employee who sustains an industrial injury "arising out of and in the course of the employment" is limited to recovery under the workers' compensation system. (Lab. Code, §§ 3600, subd. (a), 3602, subd. (a).) Injuries caused by unsafe working conditions are compensable solely under workers' compensation, even if the employer failed to correct known safety violations. (*Gunnell v. Metrocolor Laboratories, Inc.*, *supra*, 92 Cal.App.4th at pp. 720-723.) The basis for the exclusivity rule "is a presumed 'compensation bargain,' pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort." (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16; see also *LeFiell Manufacturing Co. v. Superior Court* (2012) 55 Cal.4th 275, 279.)

In *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, *supra*, 24 Cal.4th 800, the Supreme Court set forth a two-part test to determine "whether the alleged injury falls

14

within the scope of the exclusive remedy provisions." (*Id.* at p. 811.) First, is the injury "collateral to or derivative of a personal 'injury sustained and arising out of the course of employment.' " (*Id.* at p. 812.) Second, do "the alleged acts or motives that establish the elements of the cause of action fall outside the risks encompassed within the compensation bargain." (*Id.* at pp. 811-812.) "Where the acts are 'a "normal" part of the employment relationship' [citation], or workers' compensation claims process [citation], or where the motive behind these acts does not violate a 'fundamental policy of this state' [citation], then the cause of action is barred" by the exclusivity provisions of the Workers' Compensation Act. (*Id.* at p. 812.) Employing this test, Swanson's secondary self-exposure injury falls within the exclusivity provisions of the Workers' Compensation Act.

Here, the alleged compensable injury arises from the unsafe working conditions in which Swanson was exposed to respirable asbestos fibers and dusts, along with the company's failure to provide work clothes, respirators, and masks or changing rooms and showers to prevent asbestos-related injuries. The alleged secondary self-exposure injury occurred off the premises when Swanson wore his asbestos-contaminated work clothes home. The secondary self-exposure injury is derivative as it is dependent upon the compensable injury arising from and in the course and scope of Swanson's employment.[10] (See *LeFiell Manufacturing Co. v. Superior Court*, *supra*, 55 Cal.4th at

---

[10] Citing *Weinstein v. St. Mary's Medical Center* (1997) 58 Cal.App.4th 1223, 1235-1236, the Supreme Court noted that courts have allowed tort claims in cases where the aggravation of an existing workplace injury did not occur in the course and scope of employment. (*Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, *supra*, 24 Cal.4th at p. 814.) In *Weinstein*, the plaintiff worked for the hospital and suffered injuries covered by the Workers' Compensation Act. (*Weinstein*, *supra*, at p. 1226.) The plaintiff returned to the hospital for treatment and slipped and fell on the floor in one of the hospital's hallways. (*Ibid.*) The plaintiff filed a premises liability action against the hospital, seeking compensatory damages for the slip and fall. (*Id.* at p. 1227.) Invoking the dual capacity doctrine, the court held the exclusive remedy rule did not apply because Weinstein's injury occurred while seeking treatment from a medical provider who also happened to be her employer. (*Id.* at pp. 1233-1234.) The hospital owed Weinstein the same duty of care it owed to any other patient. (*Id.* at p. 1234.) This is not a case in

pp. 280, 285.) Swanson's secondary self-exposure from the asbestos fibers and dust on his work clothes would not have occurred if he were not exposed to asbestos in the course and scope of his employment. Contrary to appellants' argument, the collateral injury doctrine is not limited to loss of consortium claims. (See *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund*, *supra*, 24 Cal.4th at pp. 814-815.) Thus, Swanson's alleged injury from secondary self-exposure falls within the scope of the exclusive remedy provision. No exception applies because the acts that give rise to this claim are a part of the employment relationship. Accordingly, although appellants have presented a novel theory, the premises liability claim arising from secondary self-exposure is subject to exclusivity.

---

which there is a distinction between the duty owed to Swanson as an employee and a separate common law duty owed outside the employment relationship.

DISPOSITION

The judgment is affirmed.  No costs are awarded on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



ALDRICH, J.


We concur:




CROSKEY, Acting P. J.




KITCHING, J.


17